**People of the State of Illinois, Plaintiff-Appellee, v. William J. Walker, Defendant-Appellant.**

**Gen. No. 51,885.**

First District, First Division.

December 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Theodore A. Gottfried and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant was found guilty of voluntary manslaughter (his wife). He was sentenced to 10 to 20 years in the penitentiary.

On appeal, defendant's basic contentions are: (1) that he was not proved sane beyond a reasonable doubt; and (2) that the court committed reversible error when it sentenced him without a hearing in aggravation and mitigation.

The facts are not in dispute. On April 15, 1965, defendant, William J. Walker, a detective with the Illinois State Police, resided with his wife, Arlene (a Chicago school teacher), and four children in their home at 7451 South Aberdeen Street, Chicago. At about 5:30 p. m., the defendant and Mrs. Walker engaged in an argument, which resulted in defendant fatally shooting his wife. He called the Chicago police and informed them that he had killed his wife. Pursuant to a radio call, two Chicago police officers proceeded to defendant's address, where they found him standing on the sidewalk, apparently waiting for them. Defendant stated he had "shot her," and then led the two officers into his home, where he pointed out the gun he had used. The body of Arlene Walker was lying on the floor of the kitchen.

Defendant testified that he worked that day and returned home about 5:00 p. m. He was wearing his service revolver. He recalled having words with his wife, but he did not remember anything about the actual shooting. He did not plan to take his wife's life. He was aware that sometime during the evening of April 15, 1965, he shot his wife. He did not recall firing his service revolver and first realized that he had shot his wife when she was lying on the floor. He stated that he did not knowingly shoot his wife.

Dr. Kermit Mehlinger, a psychiatrist, testified for the defense. He had been engaged in that field for about five years, and his experience included duties in a mental hospital where he was in charge of a ward

for the criminal insane. He examined defendant on August 17, 1965, and again on February 12, 1966. He testified in detail as to his examination of defendant and of defendant's background commencing with childhood. In response to a lengthy hypothetical question based on his examination of defendant, he stated that such a person lacks substantial capacity to appreciate the criminality of his conduct, and the action of such a person at the moment of the act of hostility could be "accounted for psychodynamically as an overwhelming surge of hostile aggressive impulses, representing a backlash of long standing hostility that this man has not been able to express since early childhood, which at that moment, due to the fact that we can add the alcohol, weakened his ego controls so that he did not have enough ego defense to actually contain the furor, and aggressivity at that moment could actually transiently overwhelm his conscious control. He would act out at a very primitive level, at the level of an animal," and could be described as "being transiently psychotic."

In rebuttal, one of the arresting officers, Edward Kodatt, testified that he was with defendant about a half hour on the night of April 15, 1965, and from his observations at that time defendant was sane. He never studied nervous or mental diseases and his opinion was a lay opinion.

After hearing final arguments, the trial court reviewed the evidence at length, including the medical testimony offered in defense, and found the defendant guilty of voluntary manslaughter and sentenced him.

Initially we consider defendant's contention that he was not criminally responsible for his conduct because at the time of committing the offense he lacked "substantial capacity to appreciate the criminality of his conduct" and could not conform his conduct to the requirements of law. This defense was raised pursuant to chapter 38, section 6-2(a) of the Criminal Code. Defendant argues that

■■■■■■■■■■

"once there is evidence sufficient to raise a reasonable doubt of the sanity of the accused then the presumption of sanity ceases and the prosecution is then required to prove sanity of the accused beyond a reasonable doubt, as a necessary element of the crime charged." Defendant's authorities in support of the contention include People v. LeMay, 35 Ill2d 208, 220 NE2d 184 (1966), in which the court accepted the above concept of the burden of proof but stated that the record there raised a factual question for the jury on the issue of defendant's sanity at the time of the occurrence.

Defendant argues that the testimony of Officer Kodatt was totally inadequate to support the finding of sanity at the time of the shooting, and that "while lay testimony is admissible on the issue of sanity, the court should give little weight to the testimony where the witness did not have sufficient time to observe the defendant and had no frame of reference to use in evaluating the defendant's actions."

The State points out that the relevant evidence on defendant's mental capacity included the testimony of (1) Officer Kodatt, who observed and spoke to the defendant shortly after the actual shooting had taken place; (2) a young woman, who had been baby-sitting with defendant's children in his home at the time of the shooting; (3) several old acquaintances, who testified that defendant's reputation was good, and on cross-examination also testified that the defendant had not, in their presence, engaged in any violent or explosive conduct or unusual behavior; and also (4) that the trial judge had an opportunity to observe defendant's demeanor and behavior for himself.

■■ In a bench trial, the question of mental capacity, or lack thereof, of the defendant at the time of the commission of the crime charged, is a question of fact to be determined by the trial judge on the basis of all of the evidence presented before him, and a review-

312

ing court will not disturb the finding unless it is palpably against the weight of the evidence so as to indicate the finding was based on prejudice or passion. People v. Thomas, 409 Ill 473, 478, 100 NE2d 588 (1951).

In People v. Muniz, 31 Ill2d 130, 198 NE2d 855 (1964), it is said (p 137):

> "Where, as here, defendant waives a jury trial, the court becomes the trier of fact . . . and, therefore, fully competent to determine the question of defendant's sanity or lack thereof at the time of the crime."

██ In People v. Williams, 38 Ill2d 115, 230 NE2d 224 (1967), it is said (p 123):

> "[T]he general rule is that nonexpert witnesses may give their opinion as to an individual's sanity based on their personal observations."

██ We conclude that this record reveals the trial judge made a careful consideration of the weight and credibility of the testimony of all the witnesses who appeared before him, and from that consideration he determined that defendant was sane at the time of the shooting. We find no reason to disturb this finding.

Next considered is defendant's contention that he was sentenced without a hearing in aggravation and mitigation, as directed in chapter 38, section 1–7(g), Ill Rev Stats. The record does not show such a hearing.

The State contends that defendant waived such a hearing because he did not request it. Also, the State asserts that a great deal of the evidence at the trial gave the court information of defendant's past life, occupation and general reputation. From this the State argues, "From all of the evidence presented it is clear that the court had before it all of the information necessary to determine the mitigating factors which might warrant a less stringent sentence being imposed upon

313

William Walker. It may well have been for this reason that defense counsel made no offer of evidence in mitigation, thus waiving the right to such a hearing. The purpose of such a hearing is to bring such evidence before the trial judge and, therefore, where the judge is already in possession of it there is no need to go through the hearing."

 We do not agree with contentions of the State on this issue. In People v. Sessions, 95 Ill App2d 17, 238 NE2d 94 (1968), this court reviewed at length the statute and the current authorities on this point and said (p 27).

> "Because the holding of a hearing in aggravation and mitigation is a mandatory procedure prior to the imposition of sentence, we hold that the State has the burden of showing that the defendant expressly and understandingly waived his right to such a hearing."

The statement there made applies here: "The State has not carried its burden of showing that such a waiver was made in the instant case." Therefore, under the power vested in us by Supreme Court Rule 615, we affirm the judgment of the trial court finding defendant guilty of voluntary manslaughter. Defendant's sentence is reversed and the cause is remanded to the trial court with directions to hold a hearing in aggravation and mitigation as to the moral character, life, family, occupation and criminal record, if any, of the defendant, considering as well the evidence received at the trial, and then impose sentence upon him.

Affirmed in part and reversed in part and remanded with directions.

BURMAN, P. J. and ADESKO, J., concur.