**People of the State of Illinois, Plaintiff-Appellee, v. Donald Anderson, Defendant-Appellant.**

Gen. No. 67–142.

Second Judicial District.

December 19, 1968.

Edwin L. Douglas, Public Defender, of Wheaton, and John O. Vogel, Deputy Public Defender, of Glen Ellyn, for appellant.

William V. Hopf, State's Attorney of Du Page County, of Wheaton, and Frank Wesolowski, Jr., Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The accused, defendant Donald Anderson, was indicted for the offense of armed robbery, was tried, and found guilty by a jury verdict, upon which judgment was entered, sentencing him to serve not less than ten nor more

than twenty years in the penitentiary. The issue upon appeal is whether the People proved beyond a reasonable doubt that the defendant was criminally responsible for his conduct at the time of the commission of the offense.

■ The evidence proved beyond a reasonable doubt that on November 13, 1965, the defendant, with gun in hand, robbed the Abbott Liquor Store, 4936 Main Street, Downers Grove, Du Page County, of currency and cash approximating $750, by taking this sum from the person of James Uhler, owner and operator thereof. He first entered the store shortly after 8:00 p. m., took a bottle of Coke from the cooler, and walked to the front of the store with it. At that time, Mr. Uhler, William Gurican, an employee, and certain customers were in the store.

The defendant told Mr. Uhler that he had no money, left the Coke bottle on the store counter and went outside, ostensibly to get money from his wife. In about ten or fifteen minutes he returned, took a quart of beer from the cooler, placed the bottle on the check-out counter, and looked at other merchandise until the remaining customers left the store, and the employee entered the walk-in cooler at the rear of the store. He then, at gunpoint, demanded and received the money in question from Mr. Uhler, who was then operating the cash register and check-out counter. The defendant was adequately identified by Mr. Uhler and his employee, and by the fingerprints upon the beer bottle. About six weeks later he was apprehended in California and returned to Du Page County.

On April 5, 1966, there was a finding that the defendant was incompetent to stand trial and he was delivered to the Department of Mental Health of the State. On October 1, 1966, he received an absolute discharge and was returned to Du Page County. After further examinations by psychiatrists, he was brought to trial on March 13, 1967.

49

The defendant called two psychiatrists—Doctors Werner Tuteur and August Stiller—as witnesses. Doctor Tuteur examined the defendant on February 27, 1966, and on February 21, 1967. Doctor Stiller examined him on March 26, 1966. Neither made psychological tests, but rather, interviewed the defendant to get his history; and observed his demeanor, character and personality traits during the interview.

It was the opinion of Doctor Tuteur that the defendant was mentally ill on February 27, 1966; that the mental illness affected his capacity to appreciate the criminality of his conduct and to conform it to the requirements of the law. He was also of the opinion that this condition might, or could have, existed on November 13, 1965.

Doctor Tuteur gave the defendant an electroencephalogram test, which ruled out any organic brain damage. After the examination of February 21, 1967, Doctor Tuteur was of the opinion that the defendant had a schizophrenic reaction, chronic indifferentiated type, superimposed on a condition of mental deficiency.

Doctor Stiller was of the opinion that the defendant on March 26, 1966, was a schizophrenic with psychiatric tendencies, superimposed on his marginal endowment; and that the schizophrenia probably existed at the time of the robbery on November 13, 1965. It was also his opinion that the defendant was a follower, and that on each of said dates he could not appreciate the criminality of his conduct and was unable to conform it to the requirements of the law.

On cross-examination, both psychiatrists stated that they did not verify the history of conduct related by the defendant, but that they believed he was telling the truth.

Caroline Lytton, who had taught educable mentally handicapped children, testified that the defendant had been in her class in 1949, 1950 and 1951, and that he had difficulty in getting along with his peers.

50

In rebuttal of this testimony, the People called Doctors Donovan George Wright and John Hannai, and Captain Herbert Mertes of the Du Page County Sheriff's office. It was the opinion of Doctor Wright that the defendant was not insane but was suffering from a severe character disturbance, and from a moderate to severe impairment of intelligence. He stated that the defendant was clearly in the dull normal range of intelligence, but that he was not mentally defective.

Doctor Hannai was of the opinion that the defendant suffered from a personality disorder and had a learning problem. On cross-examination, he stated that it was his opinion that these conditions probably would not impair the defendant's capacity to appreciate the criminality of his action, but might impair, to some extent, his capacity to manage his behavior and conform it to his understanding.

Both Doctors Wright and Hannai testified that the defendant admitted to them that he had exaggerated and fabricated in his prior interviews to suit his purpose, because he wanted to go to the hospital rather than back to jail. Doctors Wright and Hannai had the benefit of the reports of Doctors Tuteur and Stiller when they made their examinations of the defendant. Also, Doctor Wright had the additional benefit of certain psychological tests which were made by Doctor Seigel.

Captain Mertes testified that in returning the defendant from California to Du Page County, he noted nothing unusual about his conduct with reference to lack of substantial capacity either to appreciate the criminality of his conduct or to conform it to the requirements of the law.

Sections 6–2(a), (b), 6–4, and 3–2(a)(6) of the Criminal Code have application to the case at bar. They provide:

"6–2 Insanity. (a) A person is not criminally responsible for his conduct if at the time of such conduct, as a result of mental disease or mental defect,

51

he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

"(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

(Ill Rev Stats 1967, c 38, par 6–2(a), (b).)

"6–4. Affirmative Defense. A defense based upon any of the provisions of Article 6 is an affirmative defense."

(Ill Rev Stats 1967, c 38, par 6–4.)

"3–2. Affirmative Defense. (a) 'Affirmative Defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon.

"(b) If the issue involved in an affirmative defense is raised then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense."

(Ill Rev Stats 1967, c 38, par 3–2(a), (b).)

Under the foregoing provisions of the Criminal Code, once the sanity of the defendant was placed in issue, it became an affirmative defense on behalf of the defendant, and the People then had the burden of proving beyond a reasonable doubt that the defendant was free of a mental defect or mental disease which would cause him to lack substantial capacity either to appreciate the criminality of his conduct, or to conform it to the requirements of the law, together with all other elements of the offense. People v. Gold, 38 Ill2d 510, 514, 515, 232 NE2d 702 (1967).

Two doctors testified as experts for the defendant and two for the People in support of their respective theories

of the case. The evidence was conflicting. It appears that Doctors Wright and Hannai, at the time of their respective examinations of the defendant, had the benefit of use of the prior examination reports of Doctors Tuteur and Stiller. In addition, Doctor Wright had the benefit of psychological tests in reaching his opinion that the defendant was not insane but was suffering from a severe character disturbance, and from a moderate to severe impairment of intelligence; and that he was not mentally defective, even though in the dull normal range of intelligence.

The opinions of Doctors Tuteur and Stiller that the defendant was mentally ill on November 13, 1965, and that this illness affected his capacity to appreciate the criminality of his conduct and to conform it to the requirements of the law, were based, at least in part, on the history related by the defendant, which was not verified. When the defendant was examined by Doctors Wright and Hannai, he admitted that he had exaggerated and fabricated in his past interviews with Doctors Tuteur and Stiller to suit his then purpose. Further, the electroencephalogram test, given by Doctor Tuteur, ruled out any organic brain damage with reference to the defendant.

██ None of the doctors included, as a part of the defendant's history, the facts surrounding the armed robbery in question. These facts clearly included premeditation and planning on the part of the defendant. Such circumstances would tend to refute the opinion of Doctor Tuteur that the defendant was a follower only. The fact that the defendant left the State was also a circumstance which the jury could consider with reference to his capacity to appreciate the criminality of his conduct.

Counsel for the defendant submitted a hypothetical question to Doctor Stiller, which included facts containing elements of premeditation and planning in connection with an armed robbery. In answer to the hypothetical ques-

53

tion, Doctor Stiller commented on this circumstance and stated that if the hypothetical person was as mentally ill in November of 1965 as the defendant was at the time of the examination in March of 1966, then the hypothetical person could not conform his conduct to the requirements of the law.

It was in the light of all the testimony, that the jury found that the People had proven beyond a reasonable doubt, that the defendant had no mental disease or defect whereby he lacked substantial capacity either to appreciate the criminality of his conduct or to conform it to the requirements of the law; and found that the People had also so proven all other elements of the offense.

█ The evidence on the sanity issue in the case at bar was in conflict: that with reference to the commission of the offense by the defendant was without conflict. The conflict on the sanity issue gave rise to a factual question which the jury was peculiarly suited to determine, and its findings will not be disturbed unless they are so manifestly against the weight of the evidence as to indicate that the verdict was based on passion or prejudice. People v. Ford, 39 Ill2d 318, 321, 235 NE2d 576 (1968); People v. Thomas, 409 Ill 473, 478, 100 NE2d 588 (1951).

██ On review of a criminal cause, we will not reverse a judgment of conviction unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory, as to justify entertaining a reasonable doubt as to the defendant's guilt. People v. Lobb, 17 Ill2d 287, 294, 161 NE2d 325 (1959). The evidence in the case at bar does not raise such doubt. Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.