THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *vs.* CURTIS DEAN BURRESS, Defendant-Appellant.

(No. 11296, ▮▮▮▮▮▮▮▮

Fourth District—August 3, 1971.

*Rehearing denied September 1, 1971.*

CRAVEN, J., dissenting.

Robert D. Owen, of Owen, Roberts, Susler & Taylor, of Decatur, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

18

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant was convicted of arson following a bench trial and was placed upon probation for a period of three years. He appeals from the judgment of conviction only.

The theory of the defendant was that psychiatric testimony raised the issue of criminal responsibility, ch. 38, § 6-2, Ill. Rev. Stat. 1961, and that the prosecution thereafter failed to prove beyond a reasonable doubt that the defendant was criminally responsible. There is no issue of defendant's capacity to "appreciate the criminality of his conduct". The testimony is that he was of average or above intelligence. It is urged, however, that the only evidence in the record is that defendant lacked a substantial capacity to "conform his conduct to the requirements of the law". The prosecution did not introduce any medical or lay opinion upon the latter issue.

Defendant urges that nothing in the record contradicts or impeaches the opinion of mental illness expressed in the psychiatric testimony so that there was no alternative for the court but to find that there was such mental illness as would bar a finding of criminal responsibility. Upon the same hypothesis it is urged that this court must reverse.

The State's Attorney argues that the issue is whether, in the light of all the evidence, the facts support a finding of guilt beyond a reasonable doubt, and that the court is not bound to accept the opinion of the psychiatrist, but as the trier of the fact must determine the criminal responsibility of the defendant.

The defendant's principal argument here is that the trial court determined that the psychiatric testimony did not overcome the presumption of sanity. There is such language in the court's discussion of the evidence following the argument of counsel. Such colloquy, however, discloses an analysis of the testimony and the facts, and with his further remarks following arguments upon a post-trial motion disclose that he was determining whether there was "such incapacity that defendant can't conform to law".

■ The rule is that if evidence of "insanity", i.e., want of criminal responsibility is introduced, the presumption of sanity does not prevail, but the burden is on the State to prove such responsibility beyond a reasonable doubt. *The People v. Le May*, 35 Ill.2d 208; 220 N.E.2d 184; *The People v. Gold*, 38 Ill.2d 510; 232 N.E.2d 702. We have found no authority that such burden imposed upon the State requires explicit opinion testimony that the defendant is "sane". It is for the trier of fact to determine from all of the evidence whether the prosecution has satisfied the burden of proof. Such trier of fact may consider the statements of the defendant as well as the physical and other facts in evidence. *The*

*People v. Le May; The People v. Miller*, 33 Ill.2d 439; 211 N.E.2d 708. He may also consider the presence or absence of a history of criminal conduct. *People v. Walker*, 103 Ill.App.2d 308; 243 N.E.2d 674. In *People v. Count*, 106 Ill.App.2d 258; 246 N.E.2d 91, it was contended that the testimony of defendant's psychiatrist was unimpeached and uncontradicted. The court held that the credibility and weight to be given psychiatric testimony was for the trier of fact, and that such opinion testimony of irresistible impulse was contradicted by facts and evidence demonstrating that the robbery was premeditated with a plan for escape.

The facts in evidence are principally the confession of defendant that as he was travelling home from the theatre on June 16th, on a state highway, he turned from the state highway and travelled to a barn which was burned. It appears that such deviation in travelling was some one and one-half miles. He pulled into the driveway, turned his car around, took a fusee apparently obtained from his place of employment, which he lighted and threw into the barn. He then returned to the highway and went on to Dalton City. Some distance away he observed the barn burning and then reported the fire. He was refused permission to ride with the fire truck, but followed it to the scene. The confession includes a statement that ten days prior while he was on his way to work in the morning, he travelled the same route turning his car around and threw a lighted fusee into the barn. On this occasion he continued to his place of work.

We have examined the testimony of the psychiatrist with care. He was examined upon the basis of being a treating physician. In April, 1968, the psychiatrist was called as a consultant by a medical doctor. Defendant was then found to be suffering from "symptoms of mental depression". He was discharged after thirty days of consultation and psychotherapy. No history or tendency toward pyromania was noted or discovered.

The day following defendant's indictment for arson he was again hospitalized, and became a patient of the psychiatrist. Under such circumstances there is ambiguity in the medical use of subjective data. As pointed out in *People v. Count*, 106 Ill.App.2d 258; 246 N.E.2d 91, that which the defendant told the psychiatrist may well be self-serving and unreliable. Defendant's medical examination was deemed essentially negative. No psychological tests were made as the psychiatrist felt that such data could be equally well developed through interview. Defendant was found to be grossly obese, with a personality disorder and a possible dependence upon parental figures. He was aged 22 years and was said to lack the natural aggressiveness for such age, but felt a great need to make himself recognized as the center of attention. It was the opinion

of the psychiatrist that the defendant set the fire as the result of an uncontrollable impulse, or what he thought was more accurately termed a neurologic compulsion. Such condition was said to have originated in what is described as the traumatic loss of his mother when defendant was aged six years. Other evidence in the record suggests that defendant was then eight or nine. So far as the record shows, defendant was thereafter raised by his father and an older sister. The then present conditions of his home life are not in the record testimony.

It is stated that there is no specific test for the condition of pyromania, and that the fact that such condition is uncontrollable is determined by the frequency and nature of the acts. It is stated that children are fascinated with setting fires, and if such persists in adolescence or as an adult without forethought or premeditation it becomes an uncontrollable impulse. Control of such impulses is said to be a cerebral function and that the degree of control depends upon "internal pressures", but that control cannot be analyzed as it takes but a few seconds for the individual to act.

The psychiatrist concluded that defendant's impulses were uncontrollable because his nature appears inhibited and passive, rather than aggressive with premeditation, so that when defendant acts upon hostile impulses he does so without much cerebral screening.

The record does not contain any statement of fact or history concerning the frequency or the nature of the setting of fires by defendant, either as an infant, in adolescence or adulthood. Following motions by the defendant, the trial judge stated that he could consider but one arson.

■ The opinion testimony does not discuss or analyze what, if any, internal pressures were believed to exist at the time of this act of the defendant. *People v. Anderson,* 104 Ill.App.2d 47; 242 N.E.2d 798. The weight of an expert's opinion is measured by the reasons given for the conclusion and the factual details which he marshals in support of it. King and Pillinger, *Opinion Evidence in Illinois,* (1942), p. 317.

■ Considering the opinion in the light of the facts of record, defendant was returning from the theatre, drove a substantial distance from his normal route of travel to the scene and turned his car around. He used a fusee from a supply which he had obtained and carried aound in his car. Such practice described by the defendants as occurring on two different occasions makes it a reasonable conclusion that this was in contemplation of speedy escape from the scene. Such combination of detail suggests other than an act upon impulse within a span of moments, as described by the psychiatrist.

Defendant's capacity to "appreciate the criminality of his conduct" is not questioned by the psychiatrist. The theory of an act of compulsion

and impulse without premeditation is contradicted by the time involved in travel and the apparent planning in doing the act. *People v. Count,* 106 Ill.App.2d 258; 246 N.E.2d 91; *People v. Anderson,* 104 Ill.App.2d 47; 242 N.E.2d 798.

Upon a consideration of all of the record before the court, we are satisfied that the evidence established defendant's guilt beyond a reasonable doubt.

Judgment affirmed.

SMITH, P. J., concurs.

Mr. JUSTICE CRAVEN dissenting.

The issue in this appeal is not the defendant's guilt but rather whether he is criminally responsible for his conduct. Psychiatric testimony that was uncontradicted was to the effect that the defendant's impulses were uncontrollable, and as I view the psychiatric testimony it constituted a description of pyromania. There is nothing in the record by way of expert or lay opinion that impeaches, contradicts, challenges or in any way overcomes this psychiatric testimony.

The rule in Illinois is that a person is not criminally responsible for his conduct if at the time of the conduct and as a result of a mental disease or mental defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. (Sec. 6-2 of ch. 38, Ill. Rev. Stat. 1969.) While a person is presumed sane, once evidence of insanity is introduced, the ordinary presumption of sanity does not prevail and the burden is cast upon the State to prove that at the time of the commission of the offense the accused had sufficient capacity to be criminally responsible. *People v. Count* (1st Dist. 1969), 106 Ill.App.2d 258, 246 N.E.2d 91; *People v. Haun* (4th Dist. 1966), 71 Ill.App.2d 262, 217 N.E.2d 470; *People v. Jackson* (1st Dist. 1969), 116 Ill.App.2d 304, 253 N.E.2d 527.

The majority opinion relies upon the observations in *Count.* In the *Count* case there seems to have been a conflict in the evidence with reference to the defendant's mental capacity. A hearing had been held to determine the defendant's competency to stand trial. A psychiatrist testified that defendant understood the nature of the charge and was able to cooperate with counsel. This, coupled with other testimony introduced at the trial, led the court to the conclusion that there was a fact question for the jury.

In this case the psychiatric testimony was uncontradicted and unimpeached. I am unable to accept the conclusion that one who is described

as not of a capacity to be held criminally responsible can be held to be so merely by a showing of detailed planning of the illegal act.

Evidence of deviousness or cunning in the planning and execution of antisocial acts is not necessarily even relevant to the issue of mental condition.

The evidence in this record casts the burden upon the People to prove that at the time of committing the act the accused was legally sane, i.e., criminally responsible for his conduct. *People v. Le May* (1966), 35 Ill.2d 208, 220 N.E.2d 184. This record shows a complete failure in sustaining that burden, for there is no evidence on the issue.