THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BRADLEY E. ARNOLD, SR., Defendant-Appellant.

(No. 71-153;

Third District—March 26, 1974.

Stephen Hurley, Assistant Appellate Defender, of Ottawa, for appellant.

Robert Richardson, State's Attorney, of Ottawa, (James Jerz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Bradley E. Arnold, Sr., the defendant, was convicted of the murder of Patricia L. Arnold after a jury trial and sentenced to a term of 30-50 years in the penitentiary. On appeal, defendant claims that the trial court erred in refusing his tendered instruction on the issue of voluntary manslaughter, and that he was not proven sane beyond a reasonable doubt at the time of the alleged offense after presenting a defense of insanity. Alternatively, defendant claims that his sentence was excessive and should be reduced. We have also taken with the case defendant's motion for summary reversal and his motion that we consider his charge that his retained trial counsel was guilty of a conflict of interest which requires that the case be reversed.

The fact that defendant shot Patricia Arnold on October 5, 1970, with a .16-gauge shot gun and that death resulted from the shooting is not disputed. Defendant went to the home where his estranged wife lived with their three children on the evening of October 5, 1970, and found no one at home. His oldest son, Bradley Arnold, Jr., was the first to return. He came from the home of neighbors, the Mirabals, where the other two children remained until later.

Defendant asked Bradley where his mother was and was told that she was out bowling. Defendant responded that she was not out bowling but was having dinner with another man. In the course of the conversation defendant asked his son "How could I love a mother that goes out and leaves her children at night?"[1] Defendant, after some 25 minutes of conversation with his son, went out and moved his truck from the front of the house to a location about a block away. He returned to the house shortly before 10:30 P.M.

Approximately 20 minutes later, defendant's daughter Paulett returned from the Mirabals, followed by his son Rick. George Mirabal had a

---

[1] There was testimony that Mrs. Arnold had made arrangements with the Mirabals to look after the children and give them supper, and that she called twice while away that evening to check on her children.

30-second conversation with defendant at that time and described defendant as looking "glassy-eyed", as if he had been drunk or crying.

After the children went to their rooms, defendant continued to sit in the living room. One of the children observed defendant trying to hide a shotgun under the chair in which he was sitting. (There was evidence that the gun was kept in a closet in the Arnold home. However, no shotgun shells were found there. Ammunition similar to that found in the weapon was found by the police in defendant's separate trailer home.) Later the lights were turned off and defendant sat in darkness.

About 11 P.M. Patricia Arnold returned home. Defendant confronted her in the hallway which was a short distance from the children's bedrooms and said, "I know where you have been". He then demanded custody of the children. Mrs. Arnold did not reply but moved to close the bedroom doors. Defendant then shot her. One of the children testified that his father said, "Die, you son of a bitch, die".

Defendant first claims that the jury could have concluded from the evidence presented that sufficient provocation existed to reduce the offense from murder to manslaughter. Consequently, he argues that the court's refusal of his instruction on manslaughter was reversible error. In the alternative, he contends that under the circumstances we should reduce the offense to voluntary manslaughter. We do not agree.

■■ It is of course true that it is reversible error to refuse an instruction defining a lesser included offense if there is evidence in the record which, if believed, would reduce the crime to the lesser offense. (*People v. Joyner* (1972), 50 Ill.2d 302, 306; *People v. Bembroy* (1972), 4 Ill.App.3d 522, 525-527.) However, it is equally well established that where the evidence clearly demonstrates that the killing is murder, a manslaughter instruction is erroneous. *People v. Latimer* (1966), 35 Ill.2d 178, 182; *People v. Handley* (1972), 51 Ill.2d 229, 235.

The testimony upon which this defendant relies is not, even if believed, evidence from which the jury could find that the lesser included offense of voluntary manslaughter was committed rather than murder.

There is testimony that on September 24, 1970, and several times thereafter in the interval before the shooting, defendant told his neighbor George Mirabal that his wife was cheating on him and that she had admitted that fact. There is also testimony that 2 days after the 24th of September defendant attempted suicide by taking an overdose of sleeping pills.

Further, an attorney whom defendant consulted when his wife filed for divorce testified on defendant's behalf that defendant came into the office in the latter part of September, 1970, and asked what he could do about the filing of the divorce. At that time defendant indicated that

his wife was having an affair with another individual named Seipp, but that all he wanted to do was to keep his family intact. Defendant returned to the attorney's office a day or two prior to October 5, approximately 1 week after the first visit, and stated that he did not feel it would do any good to contest the divorce.

Defendant received the summons in the divorce action on October 1, 1970. On October 5, Mrs. Arnold was informed by her attorney that the divorce decree would be entered, and that afternoon a copy was mailed to the defendant. That same afternoon, defendant testified, he filled out his truck driver's log in anticipation of the next day's work.

Nevertheless defendant alludes to the absence of his wife as confirming his suspicions of adultery. He claims that his wife's subsequent "refusal" to give him custody of the children provided a final source of provocation for his acts.

However, the provocation sufficient to support a reduced charge of manslaughter as relevant here must be such as to excite an intense passion in a reasonable person. (S.H.A. (1972), ch. 38, § 9—2(a); see also Committee Comments.) Defendant's belief, which he had held a substantial period of time before the homicide, that his wife had committed adultery was not a basis for the proffered instruction. (*People v. Wax* (1966), 75 Ill.App.2d 163, 182-183.) The victim's silence when asked to give defendant custody of their children was likewise not a basis for the instruction. Since words alone are ordinarily insufficient evidence of provocation, the silence of Mrs. Arnold was certainly not such provocation. See *People v. Pecora* (1969), 107 Ill.App.2d 283, 295-296, *cert.* denied, 397 U.S. 1028.

Cases cited by the defendant are inapposite on their facts. In *People v. Stepheny* (1966), 76 Ill.App.2d 131, the killing occurred after the exchange of harsh words and a quarrel of some duration. In *People v. Newberry* (1970), 127 Ill.App.2d 322, there was evidence that the defendant became so aroused and impassioned by the deceased's rude and obscene reply in response to his threat to kill himself if she would not agree to a reconciliation that he immediately drew the gun from his pocket and shot her. In both cases the defendants were convicted of voluntary manslaughter and on appeal sought reversal, raising the argument that the circumstances required a finding that the offense was murder rather than manslaughter. Similarly distinguishable is *People v. Cooke* (1968), 93 Ill.App.2d 376, where the sudden appearance of two men who pulled defendant from the car where he sat with a married woman, supported the conclusion that the defendant, at the time of the killing, was acting under a sudden and intense passion resulting from serious provocation.

In our view, the total circumstances of the instant case evidenced malice and deliberation and made a record which could not support a conviction of manslaughter. The defendant's actions in bringing shotgun shells from his trailer to the Arnold house; his attempt to hide the shotgun under the chair prior to his wife's return; his awaiting her in the dark; the testimony of the defendant's son and George Mirabal that defendant was calm when observed immediately before and after the shooting; and the malice evinced by defendant's exclamations after the shooting; all make any claim of a shooting resulting from a sudden and intense passion particularly unjustified. *People v. Brown* (1946), 392 Ill. 519.

██ We conclude that the court did not err in refusing defendant's proffered instruction defining voluntary manslaughter, and further conclude that the record does not authorize us to reduce the offense from murder to voluntary manslaughter.

Defendant next contends that he was not proven sane beyond a reasonable doubt after he offered evidence of insanity at the time of the commission of the offense. His argument is based principally on the testimony of defense witness Dr. Falk, a psychiatrist. Dr. Falk interviewed the defendant for approximately 1½ hours some 3½ months after the homicide, and was of the opinion that defendant was suffering from the mental disease of acute transitional reaction. In response to a hypothetical question, the doctor stated that it would be "possible" (later changed on cross-examination to "probable") within a reasonable degree of medical certainty that defendant was not responsible at the time the act was performed. Defendant told the doctor that at the time of the act he felt like he was in a steamy room or a steamy jungle. Such symptoms, the doctor concluded, were consistent with the diagnosis. The doctor further explained that the information that defendant's wife was having sexual relations with another man, as related in the hypothetical question, would lead him to conclude that the hypothetical man would be unable to control himself; that his defenses were gone and "he became unglued", and was acting out of control. The doctor stated that the description of the defendant as calm following the shooting would be consistent with the diagnosis.

On the other hand there was the testimony of Bradley Arnold, Jr., that defendant appeared normal on the evening of October 5, 1970; the testimony of George Mirabal, a neighbor who was well acquainted with the defendant, that defendant appeared calm immediately after the shooting and expressed an interest in acquiring legal counsel; and the testimony of eight police officers who observed defendant either directly

after the incident in question or during defendant's confinement thereafter. Each was of the opinion that defendant was normal in every way and not suffering from a mental disease.

■■■ All men are presumed to be sane and in order to present the issue of the accused's insanity the evidence must raise a reasonable doubt of his sanity at the time of the commission of the offense. (*People v. Smothers* (1973), 55 Ill.2d 172, 174; *People v. McBride* (1970), 130 Ill.App.2d 201, 207.) "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1971, ch. 38, par. 6—2(a).) Once sufficient evidence of insanity is introduced the ordinary presumption of sanity does not prevail and the burden devolves on the State to prove that the accused was legally sane at the time of the commission of the act. (*People v. Le May* (1966), 35 Ill.2d 208, 213.) The State, however, is not required to introduce explicit opinion testimony of the defendant's sanity in order to satisfy its burden of proof, but may satisfy its burden by other facts in evidence. (*People v. Burress* (1971), 1 Ill.App.3d 17, 18.) Further, non-expert witnesses may give their opinion as to an individual's sanity based upon their personal observations. *People v. Smothers* (1973), 55 Ill.2d 172, 174; *People v. Williams* (1967), 38 Ill.2d 115, 123; *People v. Ehrler* (1969), 114 Ill.App.2d 171, 183-184.

■■ In weighing the testimony of Dr. Falk, the jury could consider the time and nature of his examination, his interest as a paid witness for the defense, and the confusion involved in his anwer to the hypothetical, first based on a "possibility" and later clarified on the basis of "probability". And the jury could judge the reasonableness of the doctor's theory that the hypothetical person, if profoundly irritated, would display such irritation in a physical way in light of the testimony that the witnesses who observed defendant shortly before and after the shooting described him as calm and apparently normal. The jury could also consider the allegations of abusive acts by defendant which were included as grounds for granting Mrs. Arnold a divorce, in light of the doctor's testimony that he would have been "surprised" to find such conduct in the hypothetical person upon whom he based his opinion. Further, the jury could weigh the conflicting testimony of the police officers and other lay witnesses and assess the actions of the defendant on the evening of the shooting as bearing on the sanity issue. In our view of the record, the finding of the jury that defendant was sane at the time of the occurrence was neither against the manifest weight of the

evidence nor based upon passion or prejudice. (*People v. Anderson* (1968), 104 Ill.App.2d 47, 53-54.) We therefore conclude that the State has met its burden of proof on this issue.

Defendant further contends that, during the State's closing argument, a comment on defendant's failure to call the victim's alleged paramour as a witness was an attempt to shift the burden of proof. However, defendant's conclusion that prejudicial error resulted, requiring reversal even though no objection was made at the time, is not persuasive. Further, the cases cited by defendant in support of his argument that the prosecutor's comments constituted reversible error even though not objected to at the trial (*e.g. People v. Rubin* (1937), 366 Ill. 195, 198; *People v. Smith* (1966), 74 Ill.App.2d 458, 464; *People v. Pepper* (1971), 2 Ill.App.3d 621, 624; *People v. Mays* (1972), 3 Ill.App.3d 512, 514-515) are distinguishable on their facts. The statement was made in answer to defense counsel's closing argument that the jury could draw unfavorable inferences to the State's case by its failure to produce the alleged paramour to deny the relationship with the deceased. We conclude that any error has been waived by defendant's failure to object to the State's remarks at trial. *People v. McElroy* (1964), 30 Ill.2d 286, 291-292; *People v. Nuccio* (1973), 54 Ill.2d 39, 49.

After the filing of briefs the defendant presented a motion for summary reversal, requesting in the alternative that we allow the memorandum attached to the motion to stand as an additional issue and authority on appeal. We have taken the motion with the case. The issue raised involved an alleged conflict of interest of defendant's retained counsel at trial, Peter Ferracuti. It further appears from the record that Ferracuti was appointed as co-counsel to act with the Illinois Defender Project on appeal, but that by order of the appellate court he was dismissed as co-counsel on appeal.

In the motion defendant alleges that after filing brief and argument, the Defender Project became aware of facts which support their conclusion that Ferracuti had a conflict of interest. It was noted that defendant was found guilty of the murder charge on July 6, 1971; that Ferracuti filed a complaint on August 20, 1971, on behalf of Cyrus James Glazier, as guardian of and for the use and benefit of Paulett Marie Arnold, Rick H. Arnold and Bradley Eugene Arnold, Jr., minors, against various taverns under the Dramshop Act (Ill. Rev. Stat. 1969, ch. 43, par. 135) seeking recovery on behalf of the minor children of the defendant in this case; and that Ferracuti filed an amended complaint on July 14, 1972, which added the estate of Patricia Arnold, deceased, together with the defendant, Bradley Arnold, Sr., as party plaintiffs on be-

half of the children in place of the guardian named in the initial complaint. Copies of the complaint and amendment were attached to the motion. The damages requested were in the amount of $20,000 for resultant deprivation of the children's means of support.

Defendant argues that the dramshop suit arose out of the same circumstances as the criminal case. Further, that the dramshop complaint contained the allegations that defendant acted "wilfully" and while "drunk and intoxicated", which were in obvious conflict with the defense of the murder charge. The theory of the defense at trial was that defendant acted under a sudden and intense passion resulting from serious provocation by this wife. Defendant concludes that the conflict deprived him of his constitutional right to the effective assistance of counsel, which entitles the party represented to the undivided loyalty of counsel.

██ It is clear that a defendant in a criminal case has the constitutional right to the effective assistance of counsel, retained or appointed; and such representation is lacking even if no prejudice is shown if counsel, unknown to the accused or without his knowing waiver, occupies a duplicitous position which restrains his full talents. *Glasser v. United* (1942), 315 U.S. 60; *People v. Stoval* (1968), 40 Ill.2d 109, 111—113; *People v. Meyers* (1970), 46 Ill.2d 149, 151—2; *People v. Richardson* (1972), 7 Ill.App.3d 367, 368-9.

Defendant cites *People v. Richardson* (1972), 7 Ill.App.3d 367, in support of his motion. In *Richardson* counsel offered defendant a "package deal" on a contingent-fee basis for representation in the criminal case and in the dramshop action arising out of the same circumstances. However, the cause came up on a review of the post-conviction evidentiary hearing and the reviewing court had an adequate record from which to conclude that a conflict existed and that defendant had not made a knowledgeable waiver. *Richardson* cites the cases of *People v. Stoval* (1968), 40 Ill.2d 109, and *People v. Meyers* (1970), 46 Ill.2d 149. In *Stoval*, the record disclosed that the defense counsel's law firm represented the victim of the burglary for which defendant was charged. Lack of a knowing waiver was the underlying rationale for the court's reversal. Similarly in *Meyers* a lack of a knowing waiver was discernible from counsel's failure at the hearing in aggravation and mitigation to inform the court of the shorter sentence agreed to by the prosecutor.

██ By contrast, defendant here seeks a reversal on the allegations of a petition without a record of any hearing to consider the circumstances of the alleged conflict and the facts concerning waiver. Without a record establishing a factual basis for the claim, we cannot properly decide these issues. Therefore, the motion for summary reversal and the alterna-

tive motion for consideration of this issue on appeal are both denied. The denial, of course, is without prejudice to the right of defendant to raise the issue in a post-conviction hearing.

■■ Finally, defendant has argued that the minimum sentence of 30 years is not warranted by the nature and circumstances of the offense and the history and character of the defendant and should be modified under Supreme Court Rule 615(b). Alternatively, he asks that the minimum term be reduced to 14 years pursuant to the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(b)(1), (c)(1)), or that we remand the case to the trial court for a sentencing hearing under the Unified Code of Corrections. Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)(4) provides limited authority for appellate court modification of sentence. However, such power is to be exercised only when there are compelling reasons for the reduction of sentence or when consideration of the nature and circumstances of the offense reveals a great departure from the fundamental law and its spirit and purpose. (*People v. Brooks* (1972), 51 Ill. 2d 156; *People v. Starnes* (1972), 8 Ill.App.3d 709.) In our view the instant facts fall short of those required for modification of sentence under this provision.

■■ Defendant's alternative claim that his sentence should be reduced or the case remanded for resentencing under the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(b)(1), (c) (1)), must similarly be rejected. The statue applicable to defendant at the time of sentencing provided that the maximum sentence for murder was an indeterminate term with a minimum sentence of not less than 14 years. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1(b).) Neither the maximum nor the minimum imposable sentences were at variance with the present law. Further, defendant's sentence of 30-50 years is permitted under existing law. Since the sentence imposed does not conflict with the provisions of the Unified Code of Corrections, no reduction or remand is mandated. *People v. Hickman* (1973), 56 Ill.2d 175, 306 N.E.2d 32, 39.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.