THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK STEPHEN GREENFIELD, Defendant-Appellant.

(No. 12522;

Fourth District—August 14, 1975.

John F. McNichols and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, and Marc Towler, Law Student, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (James R. Coryell, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant appeals a judgment and sentence of 10 to 30 years imposed by the Circuit Court of Macon County upon a jury verdict of guilty of attempt to commit murder (Ill. Rev. Stat. 1971, ch. 38, pars. 8—4 and 9—1). Grounds for reversal are alleged to be the State's failure to prove defendant sane beyond a reasonable doubt, the erroneous exclusion of certain evidence relating to defendant's sanity, improper closing argument by the prosecution, and excessiveness of sentence.

It is not disputed that on June 28, 1973, the defendant attacked and stabbed his wife several times with a scissors after her arrival at the parking lot of Decatur Memorial Hospital where she worked. The defendant had a history of heavy use of liquor and drugs, mostly amphetamines and hallucinogens, and there was also a history of marital difficulty, centering in part on defendant's use of drugs and liquor. The defense of insanity was based upon possible acute drug withdrawal symptoms or alternatively hysterical neurosis, dissociative type (a mental condition resulting from severe emotional upset).

The evidence relating to the defendant's sanity consisted of testimony of the defendant, his former wife, and an examining psychiatrist, Dr. Dale Sunderland. The doctor's testimony was based entirely upon an examination of the defendant on September 24, 1973, nearly 3 months after the commission of the crime. The doctor saw no indication that the defendant was lying during the examination, and the defendant's statements were taken to be true. The defendant had informed Dr. Sunderland of his past marital and drug problems, that the last use of drugs prior to the incident was the morning before the stabbing, and that the defendant's only recollection of the incident was seeing his wife enter her car on the way from Maroa, Illinois, to work, driving himself toward Decatur without seeing his wife's car on the highway, and "[t]he next

thing that he remembered was that he was lying on the ground with a man standing over him, and that his wife was lying near him with blood on her."

Based upon this examination and various psychological tests, the doctor testified that on the date of the examination, the defendant was sane. On the same basis the doctor stated that on the date of the crime, two possibilities existed: that defendant was suffering from drug withdrawal or that he could have been suffering from an emotional element entirely separate from the drug usage which would have interfered with his appreciating the criminality of his conduct. This latter problem would have been a "hysterical neurosis, dissociative type" which could develop into "amnesia" or something similar to amnesia, which could occur before, during, or after any terrific emotional upset, or any incident where there is a lot of emotional energy involved. The doctor further testified that under these conditions, the defendant could converse with others and "move about and do things," and that if he were suffering from either condition, he would not be able to conform his conduct to the requirements of the law. He further said that it would not be unusual for the defendant to have been suffering from either of the two described conditions, and to recover from them some months later.

On cross-examination, the doctor testified that it was possible for the defendant to have been sane at the same time he stabbed his wife, and then to develop amnesia later. The doctor stated that "it could have been either way." Also, Dr. Sunderland stated that there were actually three possibilities regarding defendant's mental condition on the day of the incident the third of which was that defendant was not suffering from anything. The doctor admitted that he could have been feigning the symptoms of amnesia. Defendant had told the doctor that he could always function pretty well on drugs and that there was no prior history of blackouts. The doctor also said that the lack of history of past blackouts does not preclude likelihood of a blackout on the day in question.

In rebuttal, the victim testified that 2 days prior to the stabbing, the defendant had met her while she was in the parking lot on her way to work, that he ordered her to drive away, later driving the car himself out into the country where he threatened to kill her. She told him, in attempting to save her life, that she would try one more time to save the marriage. She also testified that her husband had been following her for 2 days prior to the stabbing, and that at the time of the incident, he did not appear to be under the influence of drugs, was lucid in his remarks to her, appeared angry, was sure of his movements, appeared to be able to communicate, and understood what the victim was saying. The victim also stated that she believed the defendant was able to appreciate the

quality of his actions and that he knew what he was doing, and intended to commit the acts he was charged with. She testified that her belief that defendant knew what he was doing was based upon his understanding that his wife did not intend to get into defendant's car, after he asked her to do so. He then chased after her when she began to run from him.

The defendant had testified as to past marital problems surrounding his drug use and lack of employment. He could remember the incident only as he had told Dr. Sunderland, and he described his feelings after the stabbing:

> "It was a suspended feeling, a type of—I was on a cloud like thing. It was like people was there but they weren't really there. I don't know how to describe it. Like their faces were white or something and they were standing out like an old time movie, and they were saying things like—I couldn't understand what they were saying. It was more or less garble. I could get no communication * * *. I had no pain, no feeling whatsoever."

The defendant had been able to work on his previous job while under the influence of drugs. He was not under the influence of drugs at the time of the stabbing. Defendant's usual drug habit was to sleep during the day and to take drugs in the afternoon.

■■ The defendant testified that he did not pick up a pair of scissors, and there was no pair of scissors in his car on the morning of June 28, 1973. The blackout occurred after defendant had traveled 2½ miles toward Decatur. Defendant had no idea as to how the pair of scissors could have come into his hands. He stated that he never carried a pair of scissors in his car, and he identified People's exhibit 1 as a pair of scissors similar to those owned by his mother, with whom he was living at the time. The defendant remembered watching his wife from his home get into her car in front of her mother's house on her way to work, after which the defendant walked to the kitchen, finished cleaning up after breakfast, went back into the bedroom, finished dressing, got his school books, and got into his car and went on his way to Decatur.

> "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." ( Ill. Rev. Stat. 1973, ch. 38, par. 6—2( a).)

Insanity is an affirmative defense (Ill. Rev. Stat. 1973, ch. 38, par. 6—4). The trial court ruled that the evidence had raised that issue and instructed the jury that the State had the burden of proving beyond a reasonable doubt that the defendant was sane at the time of the commission of the offense. The State is not required to produce opinion

evidence to meet its burden of proof. *People v. Burress,* 1 Ill.App.3d 17, 272 N.E.2d 390; *People v. Arnold,* 17 Ill.App.3d 1043, 309 N.E.2d 89.

In *People v. Conrad,* 81 Ill.App.2d 34, 225 N.E.2d 713, a psychiatrist, in answer to a hypothetical question embodying the defendant's version of the evidence, testified that the hypothetical person would not be able to choose between right and wrong. The court noted that the weight to be given to the expert opinion depended upon the validity of the accused's testimony of amnesia which was open to question. The opinion makes no mention of any countervailing evidence of defendant's sanity other than testimony by his wife that refuted defendant's claims of prior blackouts. The court held that the question of the defendant's sanity was properly one for the jury and affirmed a conviction of murder.

■■ The jury is not required to accept the conclusions of a psychiatrist. (*People v. Harrington,* 22 Ill.App.3d 938, 317 N.E.2d 161). The weight to be given an expert's opinion is measured in part on "the factual details which he marshalls in support of it." (*People v. Burress,* 1 Ill.App.3d 17, 20, 272 N.E.2d 390, 392.) Here the opinion of the doctor was based on his belief that the defendant was telling the truth when the doctor examined him. Here, as in *People v. Conrad,* the jury could believe that the defendant's claims of loss of memory were not true. The testimony of the victim, defendant's wife, as to the defendant's condition at the time of the stabbing and that "he was able to appreciate the quality of his acts" was some substantial evidence of his sanity. The supreme court stated in *People v. Ford,* 39 Ill.2d 318, 321, 235 N.E.2d 576, 578, that when the question of the accused's sanity at the time of the crime is the issue, "we will not disturb the jury's finding unless it is so manifestly against the weight of the evidence as to indicate the verdict was based on passion or prejudice. *People v. Thomas,* 409 Ill. 473." The jury's finding, implicit in the verdict, that defendant was sane at the time of the commission of the crime will not be overturned here.

■■ Defendant next contends that the trial court erroneously excluded testimony relating to his defense of insanity. The defendant testified that approximately 6 months prior to the crime defendant's wife returned home to find him hosting a drug party. She was angry and, according to defendant, after changing clothes, she exhibited to him a 3″ × 5″ card with a statement on it that she was going out to seek sexual intercourse with other men. Defendant's history and relationship to his wife over a period of time were relevant to his mental condition. (*People v. Haun,* 71 Ill.App.2d 262, 217 N.E.2d 470.) The incident was remote in time from the crime, however, and largely overshadowed by evidence introduced as to defendant's extreme disturbance at the prospects of an impending divorce near the time of the stabbing. In light of these considerations,

and the defendant's utilized opportunity to demonstrate marital discord and resulting emotional distress any error in exclusion was not reversible error. *People v. Pecora,* 107 Ill.App.2d 283, 246 N.E.2d 865.

Defendant claims reversible error in remarks made by the State in closing argument. Two complained of remarks were objected to and stricken. The first statement was:

> "This defendant is guilty of attempted murder. He's told you he's guilty of attempted murder."

Following the striking of this statement, the State immediately corrected itself and stated:

> "All right, thank you, Your Honor. He has told you nothing that would give rise to reasonable doubt that he's not guilty. The only thing he said is that, I don't remember anything."

The other comment was:

> "The state, meaning the people of the state, is entitled to have conduct of this type punished and it is this jury's responsibilities, and by not guilty you condone this type of conduct * * *. You are the conscience of the community. It will be up to you to decide whether the defendant is to be punished for what he did. The state has proven what he did and it is up to you to punish him."

■■ If improper remarks are so inflammatory that they cannot be eradicated from the jurors' minds, they will be held to constitute prejudicial error although objections to them are sustained and they are stricken. (*People v. Brown,* 3 Ill.App.3d 1022, 279 N.E.2d 765.) The damage from the remark that the defendant had said he was guilty was minimized by the posture of the case making the question of defendant's sanity the closest issue. Neither remark was so highly inflammatory as to prevent the jury from following the trial court's ruling striking the remarks.

■■ Error is also claimed in the State's reference to the defendant as a "vicious animal." No objection was made to the argument, and it is thus deemed to be waived unless it is so prejudicial that the defendant could not receive a fair trial or so flagrant as to threaten the judicial process. (*People v. Smothers,* 55 Ill.2d 172, 302 N.E.2d 324; *People v. Moore,* 9 Ill.2d 224, 137 N.E.2d 246.) Statements that defendant was a "savage" (*People v. Porter,* 11 Ill.2d 285, 143 N.E.2d 250) or calling the jury's attention to the witness' characterization of the defendant as "that animal" (*People v. Mackey,* 30 Ill.2d 190, 195 N.E.2d 636) have been stated to be improper but not of themselves reversible error. Thus, such impropriety was insufficient to negate the requirement that objection be made in order to prevent waiver. Thus, nothing stated during closing argument either by itself, in conjunction with other portions of closing argument or in the posture of the whole trial, was reversible error.

■■ Finally, defendant argues that his sentence is excessive. His criminal record includes a juvenile conviction for illegal possession of liquor, and a recent conviction for driving under the influence of drugs. In addition, at the age of 16, he was found delinquent as a result of his criminal damage to property. This arose from an occurrence at the home of his girlfriend. Defendant appeared and started waiving a knife around. He grabbed his girlfriend, shoved her, and left. He later returned demanding the return of his knife, struck his girlfriend's mother on the jaw and broke the frame and latch on the door by striking it with his hand. In addition, the testimony at the trial indicates previous threats on his wife, and at least one instance where he forced her against her will to enter his car. Defendant was found guilty by a jury of a serious crime of violence resulting in physical injury to its victim. There is nothing in the record to indicate that the sentence imposed amounts to abuse of discretion. *People v. Burbank*, 53 Ill.2d 261, 291 N.E.2d 161.

The judgment is affirmed.

Affirmed.

SIMKINS, P. J., and CRAVEN, J., concur.