(No. 35515.—)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. FRANK O'CONNELL, Plaintiff in Error.

*Opinion filed November 28, 1960.*

ROBERT B. JOHNSTONE, and THOMAS P. SULLIVAN, both of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The plaintiff in error, Frank O'Connell, hereinafter referred to as defendant, was indicted with Joseph Merritt for the armed robbery of Adolph Gross committed on November 19, 1955. Defendant was tried before a jury in the criminal court of Cook County and was found guilty. In this trial of the defendant alone, the jury failed to return a verdict on one count of the indictment brought under the Habitual Criminal Act. Defendant's written post-trial motions were overruled, and he was sentenced to imprisonment for a term of 10 to 25 years. This writ of error is prosecuted to review the proceedings.

Defendant contends that the court committed error in giving and refusing certain instructions, that the conduct of the trial judge was such as to be prejudicial to defendant, and that certain incompetent evidence was admitted in the hearing on aggravation. Defendant also attempts to challenge the constitutionality of the Habitual Criminal Act.

The evidence was undisputed that a robbery was committed against Gross by Merritt and another man. There

was, however, a sharp conflict in the testimony as to whether or not this second man was the defendant.

The victim, Gross, testified that Merritt entered the victim's grocery story about 6:45 p.m. and pushed Gross into a back room. From the back room, Gross heard a second man enter the store but did not see him. A coat was put over the head of Gross, and he was beaten and robbed. After recovering from the initial impact of the blow, Gross walked, confused and bleeding, from the back room and toward the front of the store. He testified that he saw the two men leaving the store, that he saw the face of the second man as he turned to look back, and that this man was the defendant. Gross admitted, however, that at this time he was so confused and bleeding that he could not see the telephone to call his wife. Another witness testified that Gross had stated on a previous occasion that he had not seen the face of the second man. Gross denied having made such a statement.

At about 11:00 p.m. on the same day, some police officers brought the defendant and Merritt to the hospital room, and told Gross they had the two men that had robbed him. Gross then identified the two men as the robbers. Gross admitted, however, that he had never given a description of either of the robbers to anyone prior to the time the defendant and Merritt were brought to his room. He further admitted that he had been unable to give the police officers a description of the clothing worn by either of the two men.

Another witness for the State, a policeman who was off duty at the time of the crime, testified that he saw Merritt and defendant leaving the store.

Defendant testified that he was at home during the time the crime was committed. Some, but by no means all, the details of his testimony were corroborated by his landlady.

Merritt, a brother-in-law of defendant, testified for the

State. He told essentially the same story as the victim, but further testified as to certain details happening prior and subsequent to the robbery itself. Merritt testified that the defendant was the other man involved in the robbery. On cross-examination, Merritt testified that he had pleaded guilty to the robbery and that at an earlier time, before his own plea, he had told defendant's counsel defendant had nothing to do with the robbery, but that the other person involved was a man named McCann.

Elmer R. Siegal, an attorney, a witness for the defendant, testified that he had been called to represent the defendant and Merritt at an earlier stage in the proceedings, and that Merritt had told him that McCann, not the defendant, was the other person involved.

As the case went to the jury, there was a close question of fact as to the identity of the defendant as the second robber, and the testimony of Merritt was of crucial significance. It was, therefore, highly important that the jury be instructed correctly as to the weight to be given Merritt's testimony, and it cannot be presumed an erroneous instruction was not prejudicial.

The court refused to give the instruction requested by defendant relative to the testimony of an accomplice and gave instead the following instruction tendered by the State:

"The Court instructs the jury that while the testimony of an accomplice is competent evidence such testimony is liable to grave suspicion and should be acted upon with great caution. If the testimony of an accomplice carries conviction and the jury are convinced of its truth, beyond a reasonable doubt, they should give it the same weight as would be given to the testimony of a witness who is in no way implicated in the offense, and the credibility of such an accomplice is for the jury to pass upon as they pass upon the credibility of any other witness."

Instructions substantially identical with the foregoing

were condemned by this court in *People* v. *Kelly,* 380 Ill. 589, and *People* v. *Weitzman,* 362 Ill. 11.

The People contend that the *Weitzman case,* and presumably also the *Kelly case,* should be re-examined and overruled. The brief of the People contains a line-by-line analysis of the instruction to show that it can be squared with precedent and common sense. It is admitted that if the last clause of the instruction had read, "and the credibility of *an* accomplice is for the jury to pass upon as they pass upon the credibility of any other witness" the instruction would be erroneous. It is contended, however, that the use of the phrase *"such an* accomplice" transforms the instruction into an accurate statement of law, since the word "such" refers back to an accomplice (1) whose testimony is received with "grave suspicion" and "great caution," and (2) whose testimony "carries conviction" of its "truth beyond a reasonable doubt." It is only, says the argument of the People, after these qualities have attached to the testimony of the accomplice witness that the instruction tells the jury to pass upon his testimony as they would that of any other witness.

While this argument may carry a certain appeal from a purely grammatical standpoint, we are not impressed with its logic. Indeed, instead of squaring the instruction with common sense, it makes it almost meaningless, for the interpretation suggested by the People would make the instruction say, in effect, that after the jury has already decided the accomplice is telling the truth, they are then to decide whether he is telling the truth in the same manner as they would in the case of any other witness. An instruction which can be sustained only by such a labored analysis can hardly fail to be misleading.

The instruction given with respect to the testimony of an accomplice was erroneous, and the error was not cured by any other instruction that was given. In view of the

sharp conflict in the evidence and the crucial importance of the testimony of the accomplice, it cannot be said that this error in instructing the jury was not prejudicial to the defendant.

Since the case must be reversed for the reasons stated, it is unnecessary to consider any of the other assignments of error, and the judgment is reversed and the cause remanded to the criminal court of Cook County for a new trial.

*Reversed and remanded.*