(No. 38253.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK O'CONNELL, Plaintiff in Error.

*Opinion filed May 20, 1964.*

THOMAS P. SULLIVAN and KEITH F. BODE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Frank O'Connell, was convicted of robbery in the criminal court of Cook County in 1956. In 1960, this court reversed that conviction and remanded for a new trial. (*People* v. *O'Connell*, 20 Ill.2d 442.) Following a jury trial in February, 1961, defendant was again found guilty and sentenced to a term of 5 to 20 years imprisonment.

Defendant now seeks reversal on this writ of error, alleging that the State failed to furnish him a list of witnesses to an alleged oral confession, and suppressed evidence. It is also contended that defendant's constitutional rights were violated by an illegal search and seizure, and by failure of the trial court to give him credit for the five years spent in prison between the two trials.

The uncontroverted facts established that on November 19, 1955, at about 6:40 P.M., Joseph Merritt entered a small grocery store run by Adolph Gross at 3261 Beech Street in the city of Chicago. As Gross was sweeping the floor, Merritt grabbed him from behind and forced him into the back of the store. While Gross's back was turned he heard Merritt's accomplice enter the store and say, "Put

on the coat", whereupon Gross's overcoat was thrown over his head and his money taken from his pocket. The coat was then removed and Gross was hit over the head several times and knocked to the floor. He then heard the robbers opening the cash register in the front part of the store, and, as he entered from the back room, he saw the two men going out the door.

At this moment an off-duty policeman, Max Terman, entered the store to buy some ice cream. He observed one of the departing men to be carrying a lug wrench and heard cursing. Terman said to the men, "What's the matter, boys? Is there anything wrong in there?", but the men passed him without answering. Terman then entered the store and upon seeing Gross's bloody head immediately realized what had happened and ran back into the street. He fired two warning shots into the air and then pursued the men who entered a nearby car. The robbers were unable to get the car started, and fled on foot in opposite directions as Terman gave pursuit. Unable to catch either of the men, he returned to the car, pulled out the ignition keys and picked up a lug wrench and a pair of glasses from the front seat before calling the police.

The ownership of the car was traced to defendant. In addition, police found a pay slip belonging to Merritt in the glove compartment of the car and traced the address of Merritt's residence to the home of his brother-in-law, defendant herein.

The primary issue in both trials was the identity of Merritt's accomplice because Merritt confessed his part in the crime. Defendant contended Merritt had taken defendant's car without permission and committed the crime with some other man named McCann. At the first trial Merritt testified that defendant was his accomplice; at the second trial Merritt was not a witness, but three police officers testified that defendant orally ratified Merritt's written statement which named defendant as his confederate.

Adolph Gross and officer Terman testified and both identified defendant, the store proprietor stating he recognized defendant's voice, and the officer basing his identification on his view of defendant as he was leaving the store. The probative value of this testimony, particularly the store owner's, was somewhat weakened by cross-examination so that, as this court observed in its original opinion, "there was a close question of fact as to the identity of the accused."

The defense testimony consisted of defendant's landlady, who testified defendant was at home at the time the robbery occurred and told her then that his car had been stolen; Elmer Segal, an attorney, who testified he had represented Merritt and O'Connell prior to the 1955 preliminary hearing in this case, and that Merritt told him that O'Connell's car had been taken by Merritt, that Merritt and a Billy McCann committed the robbery, that Merritt implicated defendant in his confession only because the police beat him and insisted he do so, and that Merritt had marks and bruises on his stomach; Robert Johnstone, another attorney, who testified he was appointed to represent defendant in January, 1956, and talked to Merritt who told him defendant had no connection with the robbery, but that Merritt and McCann had committed it; and defendant who testified in detail to the facts above related, denied the crime, stated he saw the police beat Merritt, and denied stating Merritt's confession was true.

Defendant argues that the admission of his "oral confession" allegedly in contravention of the requirements of the Criminal Code, was highly prejudicial error. After defendant's first trial, section 1 of division XIII of the Criminal Code was amended to include the following language: "Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this State by any person charged with any crime, a copy of such confession, if written, together with a list of the names

and addresses of all persons present at the time such confession was made shall be given to the defendant or his counsel prior to arraignment, or at such later time as the court, in its discretion, may direct, upon motion by either the prosecution or defense at the time of arraignment. If such confession was not reduced to writing, then a list of the names and addresses of all persons present at the time the confession was made shall be furnished. If the confession is made between the arraignment and the time the case is set for hearing, such fact shall be grounds for a continuance of the case on motion of either party and the confession shall thereafter be furnished as aforesaid. No confession shall be admitted as evidence in any case unless the confession and/or list of names and addresses of persons at the time the confession was made is furnished as required by this section." Ill. Rev. Stat. 1961, chap. 38, par. 729.

The above statute was effective at the time of defendant's re-arraignment and second trial, but the State gave no notice of the confession and made no tender of the statement and list of witnesses to defense counsel until February 14, 1961, during the *voir dire* examination of the jury at the second trial. Defense counsel refused the tender, for fear of acquiescing in the State's position, and then made an objection to any mention of the confession, predicated on the provisions of section 1 of division XIII of the Criminal Code, indicating he was taken by surprise. The State again tendered the written statement and list of witnesses which defense counsel then accepted, noting his nonacquiescence in the State's position. It was stipulated that the confession would not be received in evidence until the defendant's objection was ruled upon. Thereafter, the State made its opening argument and presented Adolph Gross and Max Terman. A hearing was then again held outside the presence of the jury, at which defense counsel, who had been associate counsel at the original trial, admitted that he had read the testimony of the previous trial wherein

Merritt testified that he had made a complete statement to the police naming defendant as his accomplice and that at that time defendant O'Connell had said, "Everything the kid said is true." The court offered the defense a continuance to prepare for the new evidence, but defense counsel declined the offer on the basis that he could not overcome this evidence within a short period of time and that the requirement of section 1 of division XIII was mandatory and could not then be cured by a tender or offer of continuance. The court then overruled defendant's objection.

The legislative purpose behind section 1 of division XIII was to provide the accused with protection against surprise, unfairness and inadequate preparation by requiring the disclosure, prior to trial, of the specified information as to confessions and witnesses thereto. (*People* v. *Ikerd,* 26 Ill.2d 573; *People* v. *Pelkola,* 19 Ill.2d 156.) These provisions of the statute have been held to be mandatory and failure to comply therewith has been held to be reversible error. *People* v. *DuPree,* 26 Ill.2d 320; *People* v. *Shockey,* 30 Ill.2d 147.

The People argue that upon remandment of a cause there is no legal duty upon the State to rearraign the defendant. Therefore, since the statute was not in existence at the time of the first trial and no rearraignment was necessary, the State was under no duty to give notice to the defendant of the oral confession at the second arraignment.

While the offense here occurred and the first trial took place prior to the adoption of the statute in 1957, the requirement of section 1 of division XIII is a procedural change for the benefit of defendant, and we have consistently held amendments or newly enacted laws of this nature applicable to subsequent trials even though the offense occurred prior to the legislative action. (*People* v. *Johnson,* 23 Ill.2d 465; *People* v. *Mackey,* 30 Ill.2d 190; *People* v. *Wright,* No. 37641, September Term, 1963.) As we said in *Mackey,* where we applied a statutory provision transferring to the

judge the jury's duty to fix the penalty in a rape case, "This procedural statute is applicable to all cases in which a verdict is reached after January 1, 1962, the effective date of the act, even though the offense occurred prior to that time." Clearly, therefore, the legislative intent to furnish defendants in criminal matters with the names of law enforcement officers present at the making of an oral confession was manifest at the time of the second trial and applicable thereto. The State's argument that a second arraignment was unnecessary prior to the second trial, and therefore the statute was inapplicable is, in our opinion, specious. The term "arraignment" was used in the statute, not as a condition precedent to the existence of the State's duty to furnish the prescribed information, but because it represents the earliest stage of a criminal trial at which a defendant ordinarily appears in court where delivery to him of the required documents or information could be made a matter of record.

The State also argues that since counsel representing defendant on the second trial was associate counsel at the first trial, he cannot be prejudiced by the failure to supply the list of witnesses present at the oral confession. Defense counsel concedes he read the transcript of the first trial and was aware of Merritt's testimony regarding his confession. However, defense counsel emphasizes that at no point during the first trial was there any identification of the persons present at the time O'Connell allegedly ratified the oral confession of Merritt, and that Merritt testified he did not remember who was then present. Consequently defendant had no information relating to the persons present until handed a list of witnesses during the *voir dire* examination of the second trial jury. The State's failure to furnish the information identifying these witnesses as required by section 1 of division XIII was a clear violation of the mandatory provisions thereof which could not be cured by the trial court's offer of a brief continuance. We are not unaware of our de-

cision in *People* v. *DiGerlando*, 30 Ill.2d 544, where we held a confession properly admissible even though notice of its existence was not given until some seven months after arraignment. However, this was also some ten months prior to trial which we held fulfilled the statutory purpose of preventing surprise or lack of time for adequate preparation. Obviously, disclosing for the first time the names of the witnesses after the trial has commenced is a far different situation, more nearly akin to that in *People* v. *Shockey*, 30 Ill.2d 147.

In our opinion the State was required by section 1 of division XIII to furnish defendant with the names of the testifying officers prior to the rearraignment, or, at least, sufficiently far in advance of trial to enable defendant to prepare accordingly. In view of the close factual situation we do not agree that permitting the officers to testify can be held to be other than prejudicial. *People* v. *Pelkola*, 19 Ill.2d 156; *People* v. *DuPree*, 26 Ill.2d 320; *People* v. *Gunn*, 28 Ill.2d 421.

Defendant also contends that the seizure of the lug wrench and set of keys taken from the car and admitted into evidence was unreasonable and illegal. Since this case must be retried, we shall dispose of this issue. These items were in plain view of the officer when he approached the car and their seizure involved no search. *People* v. *Stewart*, 23 Ill.2d 161, 170; *People* v. *Elmore*, 28 Ill.2d 263, 265.

Defendant has been incarcerated in the penitentiary since his arrest in 1955 and contends that the failure of the trial court to credit this time against his second sentence is a denial of constitutional equal protection. He argues that an affluent appellant can be free on bail pending appeal of his conviction whereas an indigent, such as himself, who cannot make bail must remain in prison. Hence, upon ultimate sentencing the indigent appellant loses an amount of freedom equal to the interim time in prison, unless such time is credited against his sentence. While the question is a

unique one we believe it has become moot in this case in view of our decision to remand for a new trial.

The new Code of Criminal Procedure, (Ill. Rev. Stat. 1963, chap. 38, par. 100—1, *et seq.,*) effective from January 1, 1964, governs defendant's new trial. Under the Code its procedural provisions attach to cases pending on January 1, 1964, involving offenses committed prior thereto insofar as justly applicable. (Ill. Rev. Stat. 1963, chap. 38, par. 125—3.) If defendant should be found guilty it will become the duty of the trial court to give him credit for the time served during his appeals. Ill. Rev. Stat. 1963, chap. 38, par. 121—14(d).

We find the remaining alleged trial errors are not likely to reoccur, and, in light of our disposition of this cause, we see no need to consider them. The judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*