THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANKLIN HICKMAN, JR., Defendant-Appellant.

(No. 70-229;

Second District—December 7, 1971.

920

Ralph Ruebner, of Defender Project, of Elgin, (Thomas Holum, of Defender Project, of counsel,) for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (William R. Beu, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant Franklin Hickman Jr. was found guilty by a jury and was sentenced to 10-20 years for attempt murder and 10-14 years for attempt armed robbery, the sentences to run concurrently. The defendant had been jointly indicted with three other defendants for attempt murder and attempt robbery. Upon motion of defense counsel a severance was granted and Hickman was tried separately, he being the one that allegedly did the shooting.

The evidence indicates that on the 16th of September, 1969, Peter

Scalia, the manager of the Park View Liquor Store in South Beloit, Illinois, who was tending the business alone, saw two men in the store. One of them said "this is a stick up" pointing a gun at him. Scalia was shot in the stomach. After he was shot he threw a folding chair and chased the men out of the store where he fired at them and then collapsed upon the sidewalk. Scalia identified the defendant in open court.

The Winnebago county deputies together with detectives from District 1 Headquarters of the Chicago Police Department arrested the defendant in the Roosevelt Hospital in Chicago on September 22nd, 1969. He was allowed to talk to his mother and girl friend personally for approximately one hour in the squad car. Defendant was taken from the hospital at 10:30 in the evening to District 18 Headquarters in Chicago. The Winnebago county deputies left Chicago District 18 Headquarters at approximately 4:00 o'clock in the morning and drove to Michael Reese hospital where defendant was given medical attention. About 5:00 o'clock they left Chicago for Rockford, arriving there at 7:00 o'clock in the morning. Around 9:30 A.M. Rolland McFarland, an assistant state's attorney arrived at the jail. The defendant was allowed to make telephone calls, and he called his mother and his girl friend. The defendant then signed waivers as to his rights. He was questioned in the presence of the assistant State's Attorney and Detective Mickelson and a four page statement was made by him in which he admitted the shooting. Corrections were made on the statement by the defendant and initialed but he refused to sign the same. A copy of this statement was furnished to the defendant and the attorney at the arraignment.

At the trial the State offered evidence as to defendant's arrest at the hospital in Chicago. Out of the presence of the jury the record indicates that the defendant was given a partial *Miranda* warning at that time. (*Miranda v. Arizona* 384 U.S. 436.) However, he made no statement to the officers. In driving from the hospital to the District headquarters one of the officers "questioned the defendant in relation to the location of the gun." Hickman told him that it was under the mattress at his girl friend's house. The record discloses no other statement was made by the defendant at this time. The defendant's counsel objected to this offer of evidence and the court refused to allow the testimony to be presented to the jury. No further reference was made to the gun in the trial, but it was not introduced into evidence, nor does the record disclose that the gun was recovered.

The trial proceeded and defense counsel objected to the admission of the statement made by defendant about 10:00 o'clock in the morning. Apparently, the stenographer finished transcribing the statement about 1:00 P.M.

As indicated above, a copy of this statement was furnished defendant's counsel at the time of arraignment and at no time prior to trial did counsel for the defendant move to suppress the statement. At the trial a hearing again was held outside the presence of the jury in which defense counsel stated the statement was not a "confession" but contended that under *Miranda* the defendant had not been properly warned of his rights in Chicago and that therefore the statement subsequently obtained the next morning was in contravention of the rights guaranteed him by the *Miranda* case and subsequent decisions. The court refused to suppress the statement but after a lengthy hearing in chambers ruled that witnesses could testify as to what the defendant said pertaining to this offense only. The statement itself was not introduced into evidence. The substance of the defendant's statement, according to the witnesses, was that he and three other defendants drove to a shopping center in or near Rockford; that he reached under the seat of the car, took his gun, and he and defendant Buford entered the liquor store. Hickman told Scalia that he wanted money and then fired two shots stating that "he shot up at him" and "shot in front of him" trying to stop Scalia from getting out of the store. He further stated that he ran from the store and fell attempting to get into his car, dropping his glasses and was injured, and that he went to the hospital in Chicago as a result of those injuries. The glasses were subsequently recovered at the scene and identified by the defendant at the trial as his glasses.

The record further indicates that various bullets were recovered at the scene and a bullet was removed from the body of Mr. Scalia. Some bullets recovered at the scene were identified by a witness from the Illinois Bureau of Identification as being bullets fired from the gun used by the victim Scalia in resisting attempted robbery, and the bullets recovered from the body of the victim and from the premises, came from a different .38 caliber gun.

The defendant took the stand in his own behalf and testified that he and the three other defendants went to the liquor store for the purpose of buying wine; that he and Buford entered the liquor store; that he had a revolver sticking in his hip pocket; and that the liquor store proprietor Scalia stated to him "you must be crazy, you must be a dam fool. Are you trying to rob me again?" Defendant further testified that Scalia threw a chair at him; that he pulled his revolver off from his hip "so it might not discharge on me and that a bullet went off into the ceiling." He denied that in his statement made before the assistant State's Attorney and the police detective that he admitted that it was a stick-up and that he shot Mr. Scalia.

The most vigorous contention of the defendant is that the name of the

stenographer who transcribed the defendant's statement taken at about 10:00 o'clock in the morning was not furnished in the list of witnesses which was supplied to him together with the statement, nor was the stenographer called as a witness. While defense counsel did not consider the statement made by the defendant to be a confession it would appear that all the elements of a confession were present in the statement. At no time during the trial did the defendant through his counsel object to the confession on the ground that the name of the stenographer was omitted.

In *People v. Seno* (1961), 23 Ill.2d 206, 177 N.E.2d 843 the defendant contended that:

"* * * he had not previously been furnished a complete list of persons present when the confessions were made as specified by statute."

A witness was called who apparently was present at the time of the confession and that testimony was objected to on other grounds. The court held:

"By failing to call the alleged error to the trial court's attention by appropriate objection, defendant waived the statutory requirement and cannot for the first time raise the issue upon writ of error."

The court thereupon went on to find that the evidence of defendant's guilt was such that a reversal was not required. A similar situation is found in *People v. Hubbard* (1967), 38 Ill.2d 104, 230 N.E.2d 220. In the *Hubbard* case the Supreme Court reversed the conviction, but in so doing, stated with relation to Sec. 114—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1963, ch. 38, par. 114—10):

"* * * The record shows, however, that no request for such a list was ever made by the defendant, nor was the testimony relating to the confession objected to at the trial. By failing to call the alleged error to the trial court's attention by appropriate objection, defendant waived his right under the statutory requirement and cannot for the first time raise the issue in a reviewing court."

■■ It is the opinion of this court that the presence of the stenographer at the time the statement was given came to the attention of the defendant during trial, and his failure to raise an objection at that time to the omission of the stenographer's name from the list of witnesses waived the statutory requirement.

Notwithstanding our finding in this regard we next consider the question as to whether or not the evidence of defendant's guilt presented to the court other than the testimony of the States' witnesses based on defendant's statement, is so competent as to establish the guilt of the defendant beyond a reasonable doubt notwithstanding the possible error in the introduction of the admission of the defendant that he shot the victim in a "stick up."

The line of demarcation in this regard is nebulous at best. The courts of Illinois have in various opinions held that the admission of an improper confession is not sufficient to overcome the finding of the jury or the court where the evidence is so great or so conclusive that the admission of the confession amounted to harmless error. On the other hand the courts in various cases have held in many instances that the admission is prejudicial error and the judgment must be reversed.

The leading case in support of the harmless error view above is *People v. Pelkola* (1960), 19 Ill.2d 156, 166 N.E.2d 54. In *Pelkola* the defendant was charged with armed robbery and was masked at the time of the robbery. The victim identified one of the robbers by his clothing who admitted participation in the robbery. The defendant was subsequently apprehended and the victim identified him from his clothing, stating that she had not seen his face because of the handkerchief he wore. A statement was made by the defendant, a list of the witnesses present at the confession was furnished but did not include the name of the detective who was present at the confession. The court in considering the then pertinent statute, to-wit: Ill. Rev. Stat. 1957, ch. 38, par. 729 which has been incorporated substantially the same in the present law as Sec. 114—10 of Chap. 38, held that the admission of the confession by the court in evidence was error. In that case the confession actually was introduced in rebuttal. The court in stating that the confession being inadmissible in the case in chief, was also inadmissible in rebuttal, held it was error for the trial court to have admitted it for the purposes of impeachment. However, the court went on to say:

"* * * Error in the admission of evidence is harmless where the facts involved are established by other competent evidence (citations), particularly where such other evidence is conclusive on the issue of guilt of the accused. (citations) Again, we have said that whether the admission of incompetent evidence is sufficient ground to require reversal depends on the facts in each case (citations), and have held that where the record contains sufficient competent evidence to establish the guilt of the defendant beyond reasonable doubt, the judgment will not be reversed for error in admitting evidence unless it can be seen that the error was prejudicial."

In this particular case the court held that the evidence of the defendant's guilt was established

"beyond a reasonable doubt without regard to the improper testimony" pertaining to the confession. The court stated that exclusive of the detective's testimony the proof shows:

"* * * that defendant and his companion were identified by the victim as the man who held her up."

In the case before us the defendant who shot the victim was not masked and was positively identified by the victim.

Following the *Pelkola* case in 1964 we find the Supreme Court in *People v. O'Connell* (1964), 30 Ill.2d 603, 198 N.E.2d 834 in discussing *Pelkola* stated:

"\* \* \* In view of the close factual situation we do not agree that permitting the officers to testify can be held to be other than prejudicial."

In *O'Connell* it was likewise the admission of the defendant's statement without furnishing a list of the witnesses was held to be improper. In *People v. Burks* (1965), 60 Ill.App.2d 451, 208 N.E.2d 650, again we find that testimony of the confession of the accused was admitted where the name of an officer present at the confession was omitted from the list of witnesses and the court held that the admission of such testimony constituted error. The court in *Burks* went on to way:

"\* \* \* The error, in order to be prejudicial and grounds for reversal, must be gauged in the context of the totality of the evidence presented."

The court there considered both *Pelkola* and *O'Connell* and decided that the doctrine of harmless error still exists in Illinois, saying that *O'Connell* was a close factual situation with reasonable doubt existing of defendant's guilt, and affirmed *Burks* conviction notwithstanding the improper admission of the confession.

■■ In the instant case in attempting to draw the line of demarcation, we feel that the evidence of the defendant's guilt was sufficiently proven beyond a reasonable doubt by the identification of the defendant by the victim. Further, the defendant took the stand, admitted his presence at the scene of the crime, and stated that the glasses found at the scene of the crime were prescription glasses belonging to him. While it is true he denied that it was a "stick up", stated he merely went into the liquor store to buy a bottle of Ripple, and that the victim accused him of attempting to rob him when he saw the defendant's gun sticking out of his belt, he further testified that the shooting was in substance accidental. Obviously, the jury did not believe his testimony. It may be argued that the defendant would not have taken the stand if the substance of his confession had not been admitted. It is the belief of this court that whether the defendant had taken the stand or not would not have affected the verdict of the jury where he was positively identified by the victim.

■■ Defendant contends that the statement made by him was obtained by coercion, that the warnings given by the police at the hospital in Chicago did not conform to the requirements of *Miranda,* and that the subse-

quent "statement" the next morning was therefore inadmissible. Defendant contends further that the statement given by him the following morning was tainted by the fact that the officer failed to give him a proper *Miranda* warning the night before. Factually, the entire sequence of events is outlined above. The only evidence that was introduced as to what the defendant said the night before was the testimony of Sgt. Mickelson who stated:

> "* * * Yes Sir, Sgt. Gordon of the Chicago police department questioned the defendant with relation to the location of the gun."

This was the only testimony heard by the jury relative to any questioning of defendant the night before. This court fails to see how the fact that the defendant mentioned the location of the gun to Sgt. Gordon in any way coerced or compelled him to explain or make a statement pertaining to his possible involvement in the robbery, as this record discloses nothing further involving such a gun and the jury heard nothing of any answer by defendant. After personal and phone conversations with relatives the defendant properly signed a waiver within the purview of *Miranda* and made the statement in question. It is the opinion of this court that the statement was not coerced by anything that transpired the night before the statement was made and that *Miranda* therefore does not apply.

Defendant further contends that the court should not have imposed concurrent sentences for crimes arising out of the same conduct and cites as authority *People v. Durant* (1969), 105 Ill.App.2d 216, 245 N.E.2d 41 and *People v. Schlenger* (1958), 13 Ill.2d 63, 147 N.E.2d 316. In *Durant* the defendant was indicted for and found guilty of robbery and aggravated battery. The court there held in citing *Schlenger* that concurrent sentences "for crimes resulting from the same conduct are improper, and the conviction of the lesser crime must be reversed." In *Schlenger* the defendant was convicted of armed robbery and grand larceny and was sentenced for both offenses, the sentences to run concurrently. The Appellate Court stated that "this court has never had occasion to pass upon this precise question" and went on to hold that the conviction of armed robbery could stand but that the lesser offense of larceny should be reversed. Following the *Schlenger* case, par. 1—7(m) ch. 38, Ill.Rev. Stat. 1963:

> "When a person shall have been convicted of 2 or more offenses which did not result from the same conduct, either before or after sentence has been pronounced upon him for either, the court in its discretion may order that the term of imprisonment upon any one of the convictions may commence at the expiration of the term of imprisonment upon any other of the offenses."

was apparently enacted by the legislature to cover the situation where the offense as charged resulting from the same conduct should not be sentenced on both either concurrently or consecutively.

The court in *People v. Ritchie* (1966), 66 Ill.App.2d 302, 213 N.E.2d 651 held that where the defendant was charged with rape and burglary with intent to commit rape, that he could not be sentenced for both offenses arising out of the "same act". The court went on to hold that "we believe the conviction for rape to be the graver offense." Since the *Ritchie* case the courts of this State have had occasion to pass upon this problem a considerable number of times. In 268 N.E.2d we have four different cases considering the precise question. In *People v. Hawkins* (1971), 268 N.E.2d 511 the court there held:

"We believe it is clear that the conduct which was proved as a basis for the attempt robbery conviction was factually, and under the definition of § 2—4, legally distinct from the conduct which evidenced attempt murder."

In *People v. Garry* (1971), 268 N.E.2d 568 once again the Appellate Court held that attempt murder and attempt armed robbery were two separate offenses. In *Garry* the court stated that attempt murder includes an additional element other than attempt robbery, *i.e.*, the intent to kill. In *People v. Tittsworth* (1971), 268 N.E.2d 885, the defendant was convicted of robbery and involuntary manslaughter and the court likewise held that the two offenses were independently motivated and that separate concurrent sentences could be imposed.

Lastly, in *People v. Lerch* (1971), 268 N.E.2d 901 the defendant was charged with attempted escape and aggravated battery. He received two concurrent sentences and the court held that concurrent sentences could be imposed for each offense.

■■■ We believe that two separate and distinct offenses were charged here. Both sentences imposed by the court herein have a minimum of 10 years. The defendant contends that such minimum sentence is excessive. The seriousness of the offense is set forth in the facts, herein specifically that the defendant shot the victim in the stomach. The courts have consistently said that the propriety of imposing sentences is wholly an issue which the trial court is given wide discretion. While this court has the power to modify sentences under ch. 38, par. 121—9(b)(4) Ill. Rev. Stat. 1969 we have also stated that this power should be exercised with caution. Under the factual situation here we see no reason but that the sentences imposed here are within the constitutional limits set by the legislature.

Defendant further argues that he is entitled to discharge because he

was not brought to trial wthin a 120 day period specified by Ill. Rev. Stat. 1969, ch. 38, par. 103—5(a):

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, * * *"

During the 120 day period the State obtained a continuance to January 19, 1969, as the victim Scalia had been in the hospital for over two months and had not recovered from his wounds. The State contends that this continuance extends the 120 day period pursuant to provisions of par. 103—5(c) Ill. Rev. Stat. 1969, ch. 38. The question raised is whether the Statute contemplates that a continuance granted to a date within the 120 days, in fact, grants the State that additional time beyond the 120 day limitation under the provisions of 103—5(c). The defense contends this interpretation in substance negates the meaning of the statute. This court believes that the defense is correct in its interpretation. There is no question that for good cause shown the State may make such a motion extending the period beyond the 120 days. May the State then make such a motion extending the time within the 120 days and add it to the 120 day period? The obvious intent of this Act is that the defendant will be tried within 120 days unless additional evidence is not available before the expiration of 120 days. In this case there is no evidence that the witness Scalia was not available and able to testify within the 120 day period.

■■ However, a more serious question arises relative to the computation of the 120 days. Both defense counsel and the State at the time of trial contended that the 120 day period expired on January 21st, 1970, insofar as the defendant Franklin Hickman was concerned. This is not correct. The courts have held that the first day will not be counted and the last day will be counted. (*People v. Wicks* (1969), 115 App.2d 19, 252 N.E.2d 698.) The defendant was arrested September 22nd, 1969. Computation of the number of days excluding the first day shows that the number of days between September 23rd and September 30th totals 8. If we add to that 31 days in October, 30 days in November, 31 days in December and 20 days in January, we find that we have a total of 120 days or the expiration of the 120th day is January 20th, 1970, not January 21st as contended by defense. On January 19th, Attorney Beynon appeared before Judge O'Sullivan representing Franklin Hickman, Robert Hickman, and James Cole. The defendant, Buford, was represented by attorney McNeill who was not present in court on the morning of January 19th. At this time Beynon moved the court for leave to withdraw the plea of guilty of the defendant Cole and enter a plea of not guilty. All of this was within the

120 day period. After granting leave to withdraw the plea of guilty and enter a plea of not guilty the court then set the case for trial on Wednesday, January 21st. There was no objection by Beynon or the defendants. January 21st would be one day beyond the 120 day rule. Apparently, later in the day of the 19th Attorney McNeill appeared for the defendant, Buford, and asked that the matter be set for January 26th, 1970 which was done. However, the defendant, Franklin Hickman, was not present at the time the case was continued to January 26th. On January 26, 1970, Attorney Beynon filed a motion for discharge under par. 103—5(a) on behalf of Franklin Hickman, Robert Hickman and James Cole. Attorney McNeill likewise moved for discharge of defendant Buford under the 120 day rule notwithstanding the fact that at his request the case was continued beyond that period. At that time the Judge continued the matter to January 28th when the trial was held.

■■ This court is cognizant of the fact that a continuance of a co-defendant in the absence of the accused is not a waiver of the defendant's right to a speedy trial. *People v. Gray* (1965), 210 N.E.2d 486, 33 Ill.2d 160.

The continuance to January 21st, acquiesced in by attorney Beynon on behalf of his defendants was a continuance beyond the 120 day period. Attorney Beynon in his silent acquiescence to the continuance by the court to January 21st was apparently under the impression that that would not be beyond the 120 day rule, and he made no objection to this continuance. Only on January 26th did he raise the question on behalf of his three defendants.

■■ The incongruity of the whole situation is that we have four defendants, one of whom represented by Attorney McNeill definitely has waived the 120 day rule in this case by his request for a continuance beyond that period to January 26th and insofar as attorney Beynon's client Cole is concerned, this defendant had plead guilty and only on January 19th did he withdraw his plea of guilty and enter a plea of not guilty, at best one or two days before the expiration of the 120 day period. This court is of the opinion that where a defendant has plead guilty he waives the 120 day rule and cannot avail himself of it by changing his plea to not guilty a day or two before the expiration of the 120 days. It can thus be seen that two of these defendants other than Franklin Hickman, are definitely not within the 120 day rule.

■■ The question then arises as to whether or not defense counsel's trial strategy in changing the plea of one of his three defendants the day or two before the expiration of the 120 day limitation pursuant to his understanding and his acquiescence to the continuance of the case to the 21st day of January, actually one day beyond 120 days, misled the

court and opposing counsel. There is no question from the briefs submitted and from the record that attorney Beynon on the 19th of January thought that the 120 day period would expire on the 21st. As was stated in *People v. Johnson* (1966), 75 Ill.App.2d 231, 220 N.E.2d 261:

"* * * the people as well as the defendant are entitled to a reasonable interpretation of this statute."

In *People v. Fosdick* (1967), 36 Ill.2d 524 224, N.E.2d 242, the defendant on the last day of the 120 day period, after the case had been set for trial, waived a jury on July 9th, 1964, which apparently was the 120th day. The court then set the case for a bench trial on July 14, 1964, a date beyond the 120 day limitation. On that day counsel for defendant moved the court for dismissal on the grounds that he had not been tried within the 120 days as provided for by statute. The Appellate Court, in holding that the statute in this regard should be liberally construed, found that the defendant should have been discharged. (*People v. Fosdick* (1966), 68 App.2d 184, 215 N.E.2d 153.) However, the Supreme Court in reversing the Appellate Court stated:

"While ordinarily a waiver of jury would expedite rather than delay trial, this is not true where the waiver is filed on the last day of the 120 day period and the case is allotted on the jury call. While we will not permit the State to evade the right to a speedy trial, neither will we permit a defendant to evade prosecution by creating delay. *People v. Iasello* 410 Ill. 252."

This court feels that this statement is even more true in the instant case. At the last moment, either on the 118th or 119th day, counsel for three of four defendants, jointly charged, moved the court to withdraw one defendant's plea of guilty and enter a plea of not guilty which the court allowed. Obviously, the State was not prepared to try this defendant as he had plead guilty to the charge. This court feels that the action of defense counsel, representing all three of these defendants, was such as to be attributable to all defendants including Franklin Hickman, present in court at the time of this motion.

■■ Under the peculiar circumstances of this case we feel that the defendant, Franklin Hickman, by and through the actions of his counsel, has effectively waived his right to discharge under the 120 day rule. *People v. Nowak* (1970), 45 Ill.2d 158, 168, 258 N.E.2d 313.

Judgment of the Circuit Court of Winnebago County affirmed.

Judgment affirmed.

MORAN, P. J., and ABRAHAMSON, J., concur.