(No. 45173.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. FRANKLIN HICKMAN, JR., Appellant.

*Opinion filed Nov. 30, 1973.—Rehearing denied Jan. 30, 1974.*

Illinois Defender Project, of Elgin, for appellant.

William J. Scott, Attorney General, of Springfield, and Philip G. Reinhardt, State's Attorney, of Rockford (James B. Zagel and Charles H. Levad, Assistant Attorneys General, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, Franklin Hickman, Jr., was convicted of the attempted murder and attempted armed robbery of Peter Scalia. Defendant was sentenced to the penitentiary for concurrent terms of 10 to 20 years and 10 to 14 years, respectively. The appellate court affirmed his convictions and sentences imposed thereon (*People v. Hickman, 3 Ill. App. 3d 919*) and we granted leave to appeal. Defendant argues that he was entitled to discharge because he was not tried within the time required by statute (Ill. Rev. Stat. 1969, ch. 38, par. 103–5(a)); that he was denied a fair trial when the trial court failed to hold a proper hearing as to the voluntariness of his confession, and that his sentences were excessive.

Peter Scalia was employed as a liquor store manager in South Beloit, Illinois. He testified that on September 16, 1969, at about 1:00 P.M., while dusting bottles of liquor, he turned and noticed two men standing at the cash register. One man, whom Scalia thought was the defendant, had a gun and said "this is a stick up." Scalia moved, a shot was fired, and the bullet struck him in the stomach.

He then turned, picked up a folding chair and threw it in the direction of the attackers. Another shot was fired missing Scalia, who then obtained his weapon and pursued his assailants outside, where he fired several shots and then collapsed.

Initially, defendant argues that he was not afforded a speedy trial. The applicable statutory provision (120-day rule) provides that "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." (Ill. Rev. Stat. 1969, ch. 38, par. 103–5(a).) The record discloses that defendant was arrested on September 22, 1969, and remained incarcerated until his trial began on January 28, 1970. On October 30, 1969, an indictment was returned against him and his co-defendants, James Cole, Roger Hickman and Herbert Buford. Defendant, Cole and Roger Hickman, represented by the public defender, were arraigned on November 4, 1969, and pleaded not guilty. Buford's attorney did not appear and his arraignment was postponed. The State furnished to the public defender a witness list and copies of statements, purportedly made by each defendant. Thereafter, trial was set for November 24, 1969, but continued by the court to January 19, 1970, because it was informed that Scalia had not fully recovered from his wound. A supplemental record was filed in this court pertaining to the proceedings relative to co-defendant Cole between November 4 (the date of arraignment) and January 21. It reveals that on November 21, Cole pleaded guilty to attempted armed robbery and was granted leave to file a petition for release on probation. On the State's motion, the trial court continued generally the charge of attempted murder against Cole.

On January 19, defendant, Roger Hickman, and Cole appeared. Buford's attorney did not appear at this time. The public defender requested that Cole be allowed to

withdraw his plea of guilty and enter a plea of not guilty. He further stated that "I would be ready for trial." The court allowed the change of plea and, without objection, set the date of trial for January 21. Although the record is not clear, it would appear that sometime thereafter a request by Buford's attorney for a further extension was granted and the trial was re-set for January 26. Defendant and his counsel were not present when this request was made.

On January 26 the public defender presented an oral motion for discharge of the defendant on the ground that he had not been brought to trial within the statutory period of 120 days. A written motion to this effect was denied on January 28. The public defender and Buford's attorney then moved for a severance as to each defendant. They argued that prejudice might occur if the contents of written statements allegedly obtained from several of the co-defendants were presented to a jury in a joint trial. These motions were allowed and the State proceeded to trial against Franklin Hickman.

The appellate court determined that on January 19, defendant had been incarcerated for 119 days and this conclusion is not now disputed. It held that under the peculiar factual situation defendant, through his attorney's actions, waived his right to discharge under the statute. 3 Ill. App. 3d at 931.

To support his argument that he was not afforded a speedy trial defendant now asserts that on January 19 he, Cole and Roger Hickman stood ready for trial and did not request a continuance; that the State did not object to Cole's change of plea and was also ready for trial as evidenced by its admission to this effect made on January 28; and that the continuance entered on January 19 was on the court's own motion and is not chargeable to defendant. Conversely, the State argues that the withdrawal of the plea of guilty by the public defender on behalf of Cole on the 119th day, and the silent acquies-

cence of both the public defender and defendant to a continuance to the 121st day (January 21, 1970) was sufficient to toll the statute.

In *People v. Nowak, 45 Ill.2d 158*, we said: "The decisions of this court announce the rule that where a defendant has sought and obtained a continuance within the period in question, or when he asks for and receives a change of venue, or by his own action he has otherwise caused delay, the right to be tried within the statutory period is temporarily suspended and the statute does not apply until a new statutory period has elapsed. [Citation.] We have also said that a defendant may waive his right to a speedy trial by failing to object to delays occasioned by another with whom he is jointly indicted and tried. [Citations.] *** We find that by causing delays in the respects indicated and by failing to object to delays caused by his co-defendant, Nowak effectively waived his right to be tried within the statutory period and was not entitled to discharge under the statute." (45 Ill.2d 158, at 167-68.) Furthermore, as we noted in *Nowak*, there appeared to be no oppressive or arbitrary delay which contravened his right to a speedy trial. This observation is equally applicable in the present case.

In determining whether this statutory provision has been violated we look to the circumstances in each case. (*People v. Nunnery, 54 Ill.2d 372*.) We agree with the appellate court's conclusion as to the incongruity presented in this case. The failure of Buford's attorney to appear at the proper time on January 19 obviously necessitated a postponement in the proceedings, and the change of plea by Cole results in a similar conclusion. We are of the opinion that the totality of the circumstances surrounding the proceedings on January 19 produced delay.

The issue presented is whether this delay was attributable to the defendant. While it has been recognized that a continuance which is apparently entered on the trial court's own motion may not be chargeable to defendant

(see *People v. House, 10 Ill.2d 556; People v. Wyatt, 24 Ill.2d 151*), we believe that it was incumbent upon defendant or his counsel to object to the continuance in this instance. To permit defendant's discharge upon the facts of the record presented might countenance tactical maneuvers originating at or near the expiration of the time limit provided by the statute. Such dilatory actions would permit an advantage to an attorney representing joint defendants or to joint defendants represented by separate counsel by allowing counsel to cause delay as to one defendant. The trial court would then be placed in a position of having to refuse counsel's requests or grant an otherwise undesired severance if the co-defendants or their attorney did not affirmatively acquiesce in such delay. This result is neither necessary nor beneficial to an orderly judicial process. (See *United States v. Ewell, 383 U.S. 116, 120, 15 L. Ed. 2d 627, 631, 86 S. Ct. 773.*) Therefore, we do not believe that an undue burden would be placed on an incarcerated defendant who is represented by counsel and desires a commencement of trial within the statutory period, if such defendant were required either personally or through counsel, to object to delay occasioned by a co-defendant shortly before the expiration of the statutory period or to ask for a separate trial in order to effectuate his constitutional guarantee. If defendant or his counsel do not so act, as here, then the continuance entered pursuant thereto can be attributable to him. See *People v. Meisenhelter, 381 Ill. 378, 386;* see also *Barker v. Wingo, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182.*

Defendant has cited *People v. House, 10 Ill.2d 556,* in support of his position that he be discharged. The *House* case is distinguishable for there the disputed continuance was entered by the trial court on its own motion and the defendant was not represented by counsel at that time. See also *People v. Nunnery, 54 Ill.2d 372.*

Defendant further maintains that he was denied a fair trial because of the procedure adopted by the court in

determining the voluntary nature of his confession.

Detective Stanley Mickelson of the Winnebago County sheriff's department testified that on September 22, 1969, he arrived in Chicago with a complaint and warrant for defendant's arrest and, accompanied by several Chicago police officers, went that evening to a hospital where defendant had been admitted. Mickelson, although not recalling the exact phraseology, said that one of these officers advised defendant that he had a right to remain silent, that anything he said might be used against him in court and that he had the right to an attorney. (*Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.*) Mickelson read the complaint to defendant which had been issued relative to these charges. Defendant was then taken to police headquarters for "processing". On their way a Chicago officer questioned defendant as to the location of the gun used in the crime. At this juncture defense counsel objected to the admission of further testimony on this subject, questioning the voluntary nature of the conversation and claiming that the State had not given defendant notice that such statement would be introduced as had been directed by the court. Upon further inquiry outside the jury's presence Mickelson related that defendant did mention an attorney but he did not recall if defendant requested one. The motion to suppress this conversation was granted.

Mickelson then continued his testimony before the jury stating that after completion of the "processing" procedure defendant was placed in his custody. Defendant met his mother and girl friend outside police headquarters and they were allowed to converse for about an hour in a nearby police car. At that time, because of complaints of pain which apparently resulted from defendant's fall in the parking lot as he fled the scene of the shooting, he was taken to a hospital, but X rays disclosed no fracture and he was given an injection described by Mickelson as a "pain killer." Defendant was transported to Rockford, Illinois,

arriving at 7:00 A.M. on September 23, 1969. There he was fully advised of his rights and he said that he understood them. He was placed in a cell at this time and at 9:00 A.M. was then taken to an office where Mickelson again fully advised him of his rights in the presence of an assistant State's Attorney and defendant again acknowledged that he understood. He was allowed to make telephone calls to his mother and girl friend in Chicago after which he signed two documents. The first contained the statement that he was given permission to telephone his attorney or anyone else. The second provided a recitation and waiver of his rights as guaranteed under the *Miranda* decision.

Mickelson detailed the procedure used in obtaining defendant's statement. He and the assistant State's Attorney asked defendant a series of questions to which he responded. This procedure was repeated and his answers were taken in shorthand, typed by a stenographer and given to the defendant to read and approve. If any errors or omissions were noted, corrections were made and defendant initialed them. Mickelson said that defendant refused to sign the statement (1:00 P.M.).

Defense counsel then objected to Mickelson's testimony relating to the substance of the statement. Outside the presence of the jury defense counsel said that he did not file a pretrial motion to suppress because he had been unaware of defendant's request for an attorney until Mickelson had testified. The trial court instructed the State to call any other witness who might testify as to the circumstances surrounding defendant's waiver of his rights and defense counsel reiterated his objection to the introduction of the substance of this statement. Thereupon, in the presence of the jury, assistant State's Attorney Rolland McFarland substantially corroborated Mickelson's testimony pertaining to the manner in which the statement was taken. The public defender cross-examined McFarland and Mickelson and it was determined that the statement was typed between 11:30 A.M. and

1:00 P.M., during which time defendant was reading the completed pages and was served sandwiches and coffee.

During another *in camera* conference the trial court ruled that this statement had been voluntarily made and McFarland and Mickelson would be permitted to testify before the jury as to its substance. At no time during these proceedings did defense counsel request that the defendant or any other defense witnesses be permitted to testify to any circumstances which might reflect upon the voluntary nature of the confession.

The subsequent prosecution testimony concerning the substance of the statement implicated defendant in the commission of the offenses. The statement itself was not introduced, thereby placating defense counsel's fear that other matters which it contained might prejudice defendant.

Defendant testified before the jury. On direct examination he stated that upon his arrest in the hospital he requested an attorney and was told he would be able to obtain one at a later time. He was taken to police headquarters and then back to a hospital where he received medical attention. Upon his arrival at Rockford he said that his leg was painful and that this condition persisted throughout subsequent questioning. He testified that the police gave him some aspirin and food.

Defendant further claimed that he repeated his request to McFarland for medical aid during his questioning but was told that he could see a doctor after the interview. He said that he wanted to co-operate during the questioning and admitted that he signed the two documents which concerned the waiver of his rights and his opportunity to use the telephone. In describing the interview defendant stated that questions were asked and several were rephrased when he indicated he did not understand them. However, he refused to sign the statement because he said he was uncertain as to what occurred on the day of the shooting.

On cross-examination defendant admitted he had

initialed the typewritten statement. He also testified that he was informed by his family during his telephone conversation that someone would be obtained to "represent" him but that he did not tell this to his interrogators. The remainder of defendant's testimony elicited on direct examination and upon which he was cross-examined pertained to the incident at the liquor store. He characterized it as arising from a misunderstanding which culminated in the accidental discharge of a weapon and his precipitous flight. He denied that he intended to rob Scalia.

Based upon the foregoing facts defendant argues that ever since the decision of *Jackson v. Denno, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774,* it has been recognized that correct constitutional standards demand that the trial court make an initial determination as to the admissibility of a confession outside the jury's presence where the defendant has the opportunity to testify in support of his motion without having to forego his fifth amendment privilege against self-incrimination. He maintains that once the admissibility of a confession is attacked in any way it becomes the trial court's duty to hold such a hearing at which defendant might present evidence. (*People v. Jolliff, 31 Ill.2d 462; People v. Taylor, 33 Ill.2d 417; People v. Costa, 38 Ill.2d 178.*) Defendant concludes that since the trial court in the present case did not comply with this procedure or afford him the opportunity to testify at such a hearing, his conviction should be reversed and the cause remanded for a new trial.

We find defendant's expansive constitutional interpretation of *Jackson v. Denno* unwarranted. In *Pinto v. Pierce, 389 U.S. 31, 19 L. Ed. 2d 31, 88 S. Ct. 192,* the United States Supreme Court rejected an argument predicated upon the same basis now advanced. "This Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances. *Jackson v. Denno, 378 U.S. 368,* held that

a defendant's constitutional rights are violated when his challenged confession is introduced without a determination by the trial judge of its voluntariness after an adequate hearing. \*\*\* Hence, because a disputed confession may be found involuntary and inadmissible by the judge, it would seem prudent to hold voluntariness hearings outside the presence of the jury." 389 U.S. at 32, 19 L. Ed. 2d at 33.

Despite the fact that no constitutional deficiency exists if the trial court determines the voluntary nature of a confession after a hearing in the presence of the jury, we adhere to the long-standing rule of procedure that this form of hearing is to be held outside the jury's presence. (*People v. Wagoner, 8 Ill.2d 188, 196.*) As recognized in *Pinto v. Pierce* certain prejudicial ramifications may occur if the jury is aware of a confession even though it has been held to be inadmissible. But the failure to hold a complete hearing outside the jury's presence in this case, as hereinafter discussed, is not tantamount to reversible error.

*Jackson v. Denno, 378 U.S. 368,* has been explained as requiring that defendant be afforded a procedurally adequate hearing to determine the voluntariness of his confession which comports with due process standards. (*Swenson v. Stidham, 409 U.S. 224, 34 L. Ed. 2d 431, 93 S. Ct. 359.*) In this determination the trial court must consider the totality of the circumstances to determine the voluntary nature of the statement, and the inquiry must be sufficiently broad to encompass all the relevant circumstances. (*People v. Hudson, 38 Ill.2d 616, 619.*) While the method utilized in the present case was unusual and is not to be favored, we conclude that the record accurately reflects that defendant's confession was voluntary. The testimony of Officer Mickelson and the assistant State's Attorney establishes that defendant was repeatedly given his rights under *Miranda,* to which he orally acknowledged his understanding before signing a written waiver of these guarantees. In addition defendant was afforded an oppor-

tunity to use the telephone during this period to contact his family. Their testimony, which was subjected to cross-examination, further details an interrogation procedure which does not indicate any coercive effort to extract incriminatory statements from defendant and this is reflected by defendant's admitted initialing of the statement as it was typed.

While defendant did not testify concerning the voluntary nature of the confession prior to the introduction of its substance, we note that neither he nor his counsel indicated that the former desired to testify, and there was no suggestion made that other witnesses would be called on behalf of defendant as to this issue. We assume that had defendant's subsequent testimony disclosed credible circumstances detracting from the conclusion that the confession was voluntary the trial court would have acted to safeguard defendant's rights. (See *United States v. Hathorn (5th Cir. 1971), 451 F.2d 1337, 1339.*) Thus under the particular circumstances of this case and in view of the fact that no assertion is now made challenging the sufficiency of the evidence supporting the trial court's determination that the confession was voluntary, we find no prejudicial error exists.

While we have determined that defendant's guilt was properly established, we find that the judgment entered for attempted armed robbery must be reversed. In *People v. Prim, 53 Ill.2d 62, 78,* we held that a multiple concurrent sentence for attempted armed robbery could not be imposed in conjunction with a sentence for murder. We find that under the factual situation herein the rationale of *Prim* is applicable.

Defendant also seeks to reduce the sentence for attempted murder by reliance upon the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1001—1—1 *et seq.*), which he asserts supports his contention that the aforementioned penalty was excessive. He argues that attempted murder is a Class 1 felony (Ill. Rev.

Stat., 1972 Supp., ch. 38, par. 8—4(c)(1)) for which the "minimum term shall be 4 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c)(2).) He requests that the minimum term for attempted murder conviction be reduced to 4 years.

The statute applicable to defendant provided that the maximum term for attempted murder could not exceed 20 years imprisonment (Ill. Rev. Stat. 1969, ch. 38, par. 8—4(c)(1)), and this is not at variance with present law. (See Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 8—4(c)(1), 1005—8—1(b)(2).) The minimum term which defendant received is further permitted under existing law. The sentence for attempted murder does not contravene the provisions of the Unified Code of Corrections.

The issue thus becomes whether defendant's sentence was excessive, thereby permitting a reduction of the term of imprisonment pursuant to Rule 615. (50 Ill.2d R. 615(b)(4).) The appellate court rejected this contention and we find no reason to disturb its determination.

Accordingly, the judgment of the appellate court affirming defendant's conviction and sentence for attempted murder is affirmed. Its judgment pertaining to the sentence for attempted armed robbery is reversed.

*Affirmed in part and reversed in part.*